Shoemaker and another vs. Washburn Lumber Co. and others.

SHOEMAKER and another, Appellants, vs. WASHBURN LUMBER COMPANY and others, Respondents.

*October 25 — December 10, 1897.*

*Corporations: Liability of stockholders and officers: Purchase or cancellation of stock.*

1. A corporation which is solvent may, by a vote of its stockholders, cancel stock which has been subscribed but not paid for, and such action cannot prejudice a subsequent creditor.

2. A solvent corporation having express power, under sec. 1774, S. & B. Ann. Stats., to diminish its capital stock in the manner therein provided, and also having power to purchase and dispose of property generally, a purchase by it in good faith from one of its stockholders of the stock held by him, giving him in payment his *pro rata* share of its assets, and allowing such stock to be transferred to its president in trust for such corporation and as security for money advanced by him for its purchase, cannot prejudice a subsequent creditor of the corporation or create any liability on the part of any of the officers or stockholders to such creditor.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*
The case is fully stated in the opinion.

Shoemaker and another vs. Washburn Lumber Co. and others.

For the appellants there was a brief by *Silverthorn, Hurley, Ryan & Jones,* and oral argument by *W. C. Silverthorn* and *M. A. Hurley.* They argued that it is only in exceptional cases that a corporation can purchase its own stock. If it may do so of one stockholder it may of all, and thus become extinct. Stock has no value in the hands of the corporation itself, but is like a redeemed mortgage. Cook, Stock (2d ed.), § 314. Such a purchase is not a diminution of stock, as that can be effected only by an amendment of its articles of incorporation. *Wood v. Union Gospel Church Building Asso.* 63 Wis. 9. A concealed reduction of capital would injure a subsequent creditor.

For the respondents there was a brief by *Hooper & Hooper,* and oral argument by *B. Hooper.* To the point that a corporation may purchase its own stock they cited Beach, Priv. Corp. §§ 129, 395; 23 Am. & Eng. Ency. of Law, 676; *Leland v. Hayden,* 102 Mass. 542; *Dupee v. Boston Water Power Co.* 114 id. 37; *Am. Railway-Frog Co. v. Haven,* 101 id. 398; *Comm. v. B. & A. R. Co.* 142 id. 146; *Chicago, P. & S. W. R. Co. v. Marseilles,* 84 Ill. 145, 643; *Republic L. Ins. Co. v. Swigert,* 135 id. 150; *Iowa Lumber Co. v. Foster,* 49 Iowa, 25; *Rollins v. Shaver Wagon & Carriage Co.* 80 id. 380; *Williams v. Savage Mfg. Co.* 3 Md. Ch. 418; *Hartridge v. Rockwell,* R. M. Charlton, 260; *Rivanna Nav. Co. v. Dawsons,* 3 Gratt. 19; *Farmers' & M. Bank v. Champlain Transp. Co.* 18 Vt. 131, 139; *State ex rel. Page v. Smith,* 48 id. 266, 287; *Taylor v. Miami Exporting Co.* 6 Ohio, 176; *State ex rel. Colburn v. Oberlin B. & L. Asso.* 35 Ohio St. 253; *Hill v. Silvey,* 81 Ga. 500; *Vail v. Hamilton,* 85 N. Y. 453, 457; *Ebey v. Guest,* 94 Pa. St. 160; *Chillicothe Branch of State Bank v. Fox,* 3 Blatchf. 431; Pierce, Railroads, 505.

CASSODAY, C. J. It appears from the record, in effect: That June 29, 1892, the plaintiffs recovered judgment against the defendant *Washburn Lumber Company* for $4,416.23,

damages and costs, upon a liability incurred May 2, 1889. That an execution, having been issued thereon, was returned wholly unsatisfied, March 27, 1893. That April 20, 1893, plaintiffs commenced this action, under secs. 3216–3224, R. S., against the corporation and its officers and stockholders, to sequestrate the stock, property, things in action, and effects of the corporation, and appoint a receiver thereof; that all the defendant stockholders who had not paid up their stock subscription might be ordered and compelled to do so, and pay interest thereon; that all stockholders who had received dividends on their stock be compelled to restore the sums received therefor, with interest; that *G. W. Washburn* be compelled to pay his indebtedness to the corporation, in so far as it might be needed to satisfy the claim of the plaintiffs and other just creditors of the corporation, without deduction for any pretended setoff; that he be compelled to account to the corporation for all assets received by him; that the acts of the stockholders in canceling the thirty-seven shares of stock assigned by Powers to *G. W. Washburn* be set aside as to creditors of the corporation, and that *G. W. Washburn* be compelled to account for and pay over and restore the value of all assets to the corporation used in the purchase of the same, with interest thereon; that all contracts whereby any stockholders may have been released from paying for their capital stock, in whole or in part, be set aside as to the creditors of the corporation, and they be compelled to pay up in full for the stock subscribed. The defendants answered by way of admissions, denials, and counter allegations.

The facts conceded and the facts found by the court at the close of the trial, and pertinent to the issues involved, are to the effect: That the company was incorporated under the laws of this state, April 4, 1887, with an authorized capital stock of $25,000, divided into 250 shares of $100 each, of which there were subscribed for in April and August of

that year 221 shares, as follows: *G. W. Washburn*, 150 shares; *J. R. Washburn*, ten shares; *Mary G. Washburn*, ten shares; H. H. Powers, forty shares; and *W. J. Wagstaff*, eleven shares. That the remaining twenty-nine shares so authorized were never subscribed for nor issued. That three shares so subscribed for by Powers, and seven shares so subscribed for by *Wagstaff*, were never paid in,— making the actual amount of capital stock, subscribed for and paid in, 211 shares, of $21,100. That April 8, 1887, *G. W. Washburn* was elected president of the corporation, *J. R. Washburn* vice president, and H. H. Powers secretary and treasurer. That August 9, 1887, Powers resigned both of such offices, and *Wagstaff* was elected in his place. That such officers were continued by subsequent elections, except that *Mary G. Washburn* was elected vice president and treasurer, November 3, 1890. That September 1, 1887, *G. W. Washburn* duly transferred to *Wagstaff* twenty shares of his stock so subscribed for by him, and the same was duly entered upon the books of the corporation on that day. That July 19, 1888, there were no profits of the corporation, but then and subsequently the value of its assets was over and above its indebtedness, but less than its paid-up capital stock. That, at a meeting of the stockholders then held, the three subscribed, but unpaid, shares of the Powers stock, and the seven subscribed, but unpaid, shares of the *Wagstaff* stock, mentioned, were, by unanimous consent, directed to be canceled on the books of the corporation, and charged back to the unsubscribed stock account, and Powers and *Wagstaff* were thereby released from their subscription for such unpaid shares of stock, respectively. That the corporation was on that day solvent, and such cancellations and releases were made in good faith, and in no manner tainted with fraud. That the 211 shares of paid-up stock of the corporation was, October 6, 1888, owned as follows: *G. W. Washburn*, 130 shares; *J. R. Washburn*, ten shares; *Mary G. Washburn*, ten shares; H. H. Pow-

·ers, thirty-seven shares; and *Wagstaff*, twenty-four shares. That at that time, October 6, 1888, and at all times prior thereto, the corporation was solvent, but without any net profits. That October 6, 1888, and some seven months prior to the time when the liability of the corporation to the plaintiffs was incurred, the corporation purchased from Powers his thirty-seven shares of paid-up stock therein, paying him therefor out of the capital stock of the corporation $3,150.91, as follows: Accounts and bills receivable of the corporation, $1,479.66; lumber, $526; and cash, $1,145.25, advanced to Powers by *G. W. Washburn* for the benefit of the corporation; and, to secure him for such advances, Powers, with the consent of the corporation, thereupon assigned and transferred to *G. W. Washburn* the thirty-seven shares of stock by assignment absolute in form, but really and in fact in trust for the corporation, and as security for the $1,145.25 so advanced by him.' That December 11, 1888, there was charged to *G. W. Washburn* upon the books of the corporation, on account of the purchase of the Powers stock, $3,150.91. That there was credited to him on the books of the corporation on his account in relation to that stock, May 7, 1890, $3,150.91. That such purchase of the Powers stock, so made by the corporation and held by *G. W. Washburn* in trust for it, and all the transactions of the defendants in relation to the purchase of such stock, were made in good faith and without any fraudulent intent. That said thirty-seven shares of Powers stock was, upon the payment of the $1,145.25 so advanced by *G. W. Washburn* thereupon, canceled and retired, and February 15, 1889, H. H. Powers formally resigned as a director of the corporation. That December 30, 1889, the corporation declared and paid a cash dividend of eight and one-fourth per cent. on its 211 shares of paid-up capital stock, including the thirty-seven shares of stock so purchased by the corporation, and then standing in the name of *G. W. Washburn*. That *G. W. Washburn* was by such dividend so

paid $1,377.75 on 167 shares of stock, including the thirty-
seven shares so purchased.   That *J. R. Washburn* and *Mary
G. Washburn* were each so paid by such dividend $82.50 on
ten shares of stock owned by them, respectively.   That *Way-
staff* was so paid by such dividend $198 on twenty-four shares
of stock owned by him.   That thereafter, and on the same
day, *G. W. Washburn* paid to *J. R. Washburn* $17.50, to *Mary
G. Washburn* $17.50, and to *Wagstaff* $42, as and for their
*pro rata* interest, according to the number of shares of stock
owned by them and himself, respectively, in and to the
amount received by him as dividends on the thirty-seven
shares so purchased by the corporation and held by him ·
trust as aforesaid.   That, with the exception of a small ｢
chase of lumber, the business of the corporation, after Ｌ
cember 30, 1889, consisted wholly in closing out its busines.
and winding up its affairs as a corporation.   That at the time
of making such dividend the corporation had no net profits,
and the same was paid out of its capital stock.   That the
books of the corporation do not correctly state the accounts
between it and *G. W. Washburn*, nor between it and *John R.
Washburn*.   That *G. W. Washburn* should be credited, in his
account with the corporation, $1,129.40 for lumber sold and
delivered by him to it between May 18, 1887, and Decem-
ber 8, 1888, and with $475.25 for expenses incurred by him,
and services performed by him, between May 9, 1887, and
December 25, 1888, for which no credit was given him by
the corporation on its books.   That the plaintiffs were the
only creditors of the corporation.   That the only assets now
owned by the corporation, aside from the liability of its
stockholders and directors to it, are practically worthless
accounts and bills receivable.   That *G. W. Washburn* is not
indebted to the corporation nor liable to it in any way, ex-
cept as a stockholder and director therein, for such dividends
so received by him.   That neither *J. R. Washburn* nor *Wag-
staff* is indebted to the corporation or liable to it in any way,

except as a stockholder and director therein, for such dividend so received by him. That *Mary G. Washburn* is only indebted for such dividend. That no intentional fraud has been committed by any of the stockholders, directors, or officers of the corporation.

And as conclusions of law, the court found, in effect: That the surrender and cancellation of the three shares of Powers stock, and seven shares of *Wagstaff* stock, July 19, 1888, was valid and legal, and that Powers and *Wagstaff* were, respectively, thereby fully released from their subscription therefor. That the corporation had the legal right to purchase the thirty-seven shares of the Powers stock, October 6, 1888, and to cancel and retire the same, and that neither of the defendants is liable to the plaintiffs on account thereof. That the plaintiffs are entitled to judgment against the defendants, as stockholders, for the several amounts received by them, respectively, as cash dividend, December 30, 1889, as follows: *G. W. Washburn*, $1,300.75; *Mary G. Washburn*, $100; *J. R. Washburn*, $100; and *Wagstaff*, $240,— together with legal interest on the said sums, respectively, from December 30, 1889; *or instead*, at their option, the plaintiffs are entitled to judgment against *G. W. Washburn*, *J. R. Washburn*, and *W. J. Wagstaff*, jointly and severally, for $1,740.75 (being the aggregate amounts mentioned), paid by the corporation as cash dividend, December 30, 1889, on account of their liability as directors for improperly declaring and paying such dividend, together with legal interest thereon from December 30, 1889. That the plaintiffs are entitled to judgment against all the defendants for their costs and disbursements in this action. Judgment was ordered to be entered accordingly. From the judgment so entered the plaintiffs bring this appeal.

The facts stated present three questions for consideration:

1. Were the defendants, or any of them, liable to the plaintiffs by reason of the cancellation of the ten shares of

stock which had been so subscribed, but no part of which had ever been paid in? Such cancellation was so made on the books of the corporation, July 19, 1888, at a meeting of the stockholders, and by their unanimous consent and in good faith, and when the corporation was perfectly solvent, having then on hand assets over and above its indebtedness; and such ten shares of stock were then and there, by such consent and direction, charged back to the unsubscribed stock account, and the subscribers therefor, respectively, released. Such cancellation of such wholly unpaid shares merely deprived the corporation of the right to call upon the subscribers to pay the amount of their subscriptions, respectively. But the several stockholders all consented. No creditor then existing was prejudiced, and it does not appear how any subsequent creditor could be. The liability to the plaintiffs, in question, was not incurred until nearly a year afterwards. We perceive no valid objection to such cancellation.

2. The more serious question is whether the defendants, or any of them, a liable to the plaintiffs by reason of the purchase by the corporation from Powers of his thirty-seven shares of paid- tock therein, October 6, 1888, seven months prior to the time when the liability of the corporation to the plaintiffs was incurred. At the time of the purchase the corporation was solvent, but without any net profits. The amount paid by the corporation to Powers for the thirty-seven shares ($3,700) of stock was $3,150.91, the same being his proportionate share of the surplus moneys, property, and good accounts of the corporation over and above its then existing indebtedness. In making such payment the corporation transferred to Powers, from its assets then on hand $2,005.66, and $1,145.25 cash, which *G. W. Washburn*, a request, then advanced to Powers for its benefit; and to ure him therefor, Powers, by direction of the corporation assigned the stock to *G. W. Washburn*. Counsel con-

tend that the stock was really and in fact purchased by
*G. W. Washburn,* and the assets which the corporation trans-
ferred to Powers were advanced for the use and benefit of
*G. W. Washburn,* or else for the benefit of the several stock-
holders. But this is contrary to the findings of fact, and
the evidence does not warrant us in disturbing those find-
ings. Treating the purchase as made by the corporation,
and the $1,145.25 advanced by *G. W. Washburn* as a loan to
the corporation, and the assignment of stock to him as mere
security for that loan, it follows that, when the corporation
repaid the moneys so advanced, *G. W. Washburn's* right to·
the stock terminated, and the purchase by the corporation
became complete and absolute. The result of the transaction
was to the effect that the corporation purchased the thirty-
seven shares of stock of Powers, October 6, 1888, and at the
same time paid him therefor the whole amount of the consid-
eration of $3,150.91, and then pledged the stock as collateral
security for money borrowed from *G. W. Washburn.* The
mere fact that *G. W. Washburn* held such stock as collateral
security did not make him liable to repay the corporation
what it had paid to Powers for the stock, otherwise what
was taken as mere security would be transformed into an
actual purchase on credit. *Gilman v. Gross, ante,* p. 224.

It is true that, some fifteen months after such purchase
by the corporation, it declared a dividend of eight and one-
quarter per cent. on the whole amount of its paid-up capital
stock,— including the thirty-seven shares in question,— and
then distributed the amount among its several stockholders
according to their respective holdings. But for that amount
of $1,740.75, and the whole thereof, the plaintiffs have re-
covered judgment in this action, and none of the defendants
have appealed therefrom. The declaring of such dividend,
therefore, is eliminated from the case. Although Powers is
named as a defendant in the case, yet no service of the sum-
mons was ever made upon him, as he was beyond the juris-

diction of the court. The question as to the recovery of the
$3,150.91, so paid to Powers, *from him*, is not here involved.
Since, as indicated, no part of the $3,150.91 was paid by the
corporation to *G. W. Washburn*, it follows that no recovery
can be had against *G. W. Washburn* merely by reason of such
payment to Powers.

The real question presented, therefore, is whether *G. W.
Washburn* and the other officers of the corporation are liable
to the plaintiffs to the extent of their claim by reason of the
alleged misappropriation of the $3,150.91 so paid by the cor-
poration to Powers. As indicated, the company was incor-
porated under the laws of this state by written articles of
incorporation, in the manner prescribed by the statute. S. &
B. Ann. Stats. secs. 1771, 1772. Such articles stated the
amount of capital stock, the number of shares, and the
amount of each share; but twenty-nine shares of the stock
so stated were never subscribed, and ten shares that were
subscribed were never paid in. The statute authorized the
corporation, at any meeting of its members, by a vote of, at
least, the owners of two thirds of all the stock then outstand-
ing, to amend its articles of organization so as to modify or
enlarge its business, increase or diminish its capital stock,
change its officers or the number of its directors, or provide
anything which might have been originally provided in such
articles. Such amendment, however, was only to be adopted
in accordance with such articles, if a mode of amendment
was therein prescribed. Sec. 1774, S. & B. Ann. Stats. Thus,
it appears that the owners of two thirds of its stock were
expressly authorized at any meeting of its members to dimin-
ish its capital stock. It does not appear that they did so in
the manner prescribed by the statute, but their authority to
do so existed. So the corporation was expressly authorized
to take by gift, devise, purchase, or otherwise, and manage
and hold, convey, mortgage, lease, or otherwise dispose of
at pleasure, such property, of whatever kind, as should be

necessary to its business or purposes, or to the protection or benefit of its property; but no such corporation should "take or hold stock in any *other* corporation," except as therein provided. Sec. 1775, S. & B. Ann. Stats. The corporation was perfectly solvent at the time of its purchase of the Powers stock. No stockholder makes any complaint of such purchase. No creditor then existing is here complaining of such purchase. In fact, the plaintiffs appear to be the only creditors of the corporation, and its liability to them was not incurred until seven months after the purchase. There is nothing to impeach the good faith of the purchase, nor the good faith of any of the officers or directors of the corporation. In the case at bar there is no statutory liability of stockholders, merely because they are stockholders, as in *Flour City Nat. Bank v. Wechselberg*, 45 Fed. Rep. 547. The liability, if any, is against the officers for a wrongful disposition of corporate assets. The action is not on contract, but in tort. After careful consideration, we are constrained to hold, upon the facts found and stated, that the officers are not liable to the plaintiffs for any wrongful disposition or conversion of corporate assets. Thus, it has been held that, in the absence of any statute to the contrary, a corporation may purchase and dispose of its own stock, provided the same is done in good faith, without intent to injure creditors thereof, and they are not injured thereby. *First Nat. Bank v. Salem Capital Flour-Mills Co.* 39 Fed. Rep. 89, per DEADY, J. To the same effect: *City Bank v. Bruce*, 17 N. Y. 507; *Strong v. Brooklyn C. T. R. Co.* 93 N. Y. 426; *Taylor v. Miami Exporting Co.* 6 Ohio, 176; *Dupee v. Boston Water Power Co.* 114 Mass. 37; *Chicago, P. & S. W. R. Co. v. Marseilles*, 84 Ill. 145; *S. C.* id. 643. Upon the same theory it has been held, by the supreme court of the United States, that "where a corporation, solvent at the time, and having no actual intent to defraud creditors, disposes of its lands for an inadequate consideration or by a voluntary conveyance,

its subsequent creditors cannot question the transaction."
*Graham v. Railroad Co.* 102 U. S. 148.

3. The court has found, as a matter of fact, that *G. W. Washburn* is not indebted to the corporation, or liable to it in any way, except on account of the dividends as mentioned. Upon the record before us we cannot disturb such finding.

*By the Court.*— The judgment of the circuit court is affirmed.

As to the power of a corporation to deal in the stock of other corporations or in its own, see note to *Buckeye M. & F. Co. v. Harvey* (92 Tenn. 115), in 18 L. R. A. 252.— REP.