**In re RELIABLE MANUFACTURING CORPORATION, Bankrupt.**

**LIBCO CORPORATION, Appellant,**

v.

**Charles W. LEIGH and Ervin F. Dusek, Appellees.**

**No. 81 C 828.**

United States District Court, N. D. Illinois, E. D.

Nov. 18, 1981.

Malcolm M. Gaynor, Louis W. Levit, Arnold Pagniucci, Chicago, Ill., for debtor-appellee.

Fay Clayton, Sachnoff, Schrager, Jones, Weaver, Rubenstein, Ware Adams, Chicago, Ill., for appellant.

## MEMORANDUM ORDER

MARSHALL, District Judge.

On April 5, 1977, Libco Corporation ("Libco") acquired all of the shares of the capital stock of the bankrupt, Reliable Manufacturing Corporation ("Reliable"), from Charles Leigh and Ervin Dusek ("Leigh" and "Dusek"). The sales contract required Libco to pay Leigh and Dusek $1,750,000 for the stock. The money was to be paid in four installments. The last two payments, totalling $940,000, were to be made on January 31, 1979, and January 31, 1980. These payments were guaranteed by the bankrupt, Reliable. The guarantee was dated April 5, 1977, and was signed by Leigh on behalf of Reliable. Reliable's guarantee was accompanied by a security agreement, also dated April 5, 1977. The security agreement purported to grant Leigh and Dusek a security interest in all of Reliable's machinery, equipment, tools and dies. Leigh also signed this security agreement on behalf of Reliable. On April 8, 1977, a financing statement was filed with the Illinois Secretary of State which purported to cover Leigh and Dusek's security interest.

Libco soon became dissatisfied with its purchase of Reliable's stock. Six months after the sale, it filed suit against Leigh and Dusek, alleging fraud and misrepresentation in connection with the transaction. *Libco Corp. v. Dusek*, No. 77 C 4386 (N.D. Ill.). That litigation remains unresolved.

On March 8, 1979, a Creditors' Petition was filed against Reliable. On March 16, Reliable responded by filing a petition under Chapter 11 of the Bankruptcy Act of 1898, as amended, 11 U.S.C. §§ 701–87 (1976).[1]

On September 18, 1979, Reliable, as debtor in possession, filed a complaint to sell its machinery and equipment free and clear of all liens, including the security interest purportedly granted by the Security Agreement of April 5, 1977. Leigh and Dusek responded by asserting the validity of their claimed security interest, and moving for summary judgment. Reliable, the trustee, Libco[2] and the Creditors' Committee contested Leigh and Dusek's claim. The Bankruptcy Court subsequently ordered the machinery and equipment sold, so that the proceeds of that sale became the object of the dispute.

In an order and opinion dated November 21, 1979, Judge James granted Leigh and Dusek's motion for summary judgment. Upon motions for reconsideration, the Bankruptcy Court, on December 9, 1980, again granted the motion for summary judgment of Leigh and Dusek. It held that the guarantee and security agreement were supported by adequate consideration, that they served a valid corporate purpose of Reliable, and did not illegally impair Reliable's capital. Only Libco has appealed the ruling of the Bankruptcy Court.

Libco mounts two challenges before this court to the validity of Leigh and Dusek's security interest. The first is Libco's contention that the guaranty and/or security interest is invalid because it was not supported by consideration. Libco contends that Reliable received no consideration for its guaranty, and therefore the security agreement is unenforceable.

We find it unnecessary to resolve the question of whether Reliable received sufficient consideration, for we hold that the security agreement is enforceable even if Reliable received no consideration.

Ill.Rev.Stat., Ch. 26, § 9–203(1) (1979) governs the question of whether a security interest is enforceable. It provides:

[A] security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless

(a) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned; and

(b) value has been given; and

(c) the debtor has rights in the collateral.

Here, there is no dispute that Leigh and Dusek's security interest satisfies requirements (a) and (c) of § 9–203(1). The debtor, Reliable,[3] signed a written security agreement describing the collateral as machinery, equipment, tools and dies,[4] and had rights in the collateral. The only dispute is whether requirement (b) is satisfied.

§ 1–201(44)(d) provides that a person gives value for rights if he acquires them in return for any consideration sufficient to support a simple contract. There can be no question but that Leigh and Dusek satisfy this definition. They gave ample consideration, their Reliable stock, in return for the rights they received. There is no requirement, either in 9–203 or 1–201(44), that the

---

1. The Bankruptcy Act of 1898, 11 U.S.C. §§ 1 et seq. (1976), remains applicable to this proceeding. See Pub.L.No.95–598, § 403, 92 Stat. 2683 (1978).

2. Before the Bankruptcy Court, Libco never disputed the validity of Leigh and Dusek's security interest. Instead, it asserted a prior perfected security interest in the machinery and equipment. Libco has abandoned that argu-

ment before this court, and instead contests the validity of Leigh and Dusek's security interest.

3. Reliable qualifies as a debtor since it owes performance of the obligation secured. *See id.* § 9–105(1)(d).

4. The adequacy of the description is not challenged.

value be given to the debtor. The UCC only requires that value be given to someone. In fact, the UCC expressly contemplates the case where the debtor never receives any consideration from the secured party. It states that a debtor can be a surety who does not receive consideration himself, but merely guarantees another's debt. *See* 9–105, Official Comment 2. The fact that the surety received no consideration, or that the consideration is not recited in the security agreement, is entirely irrelevant.[5] The UCC contains no such requirements.

The correct analysis of this problem is contained in *In Re Terminal Moving & Storage Co.*, 631 F.2d 547 (8th Cir. 1980) (en banc). In that case, one Walker bought shares of Terminal from their previous owner, a holding company. Walker gave the seller his note for the purchase price. Simultaneously, Terminal granted the seller a security interest in its assets, as security for the note. The court upheld the security interest, even though Terminal never received any consideration but merely secured Walker's debt:

> The focus of Ark.Stat.Ann. § 85–9–203(1)(b) which provides that a security interest does not attach unless "value has been given" is on whether the secured party *gives* value and not whether the person whose assets are pledge receives consideration. *Id.* at 551 (emphasis in original).

The second challenge Libco mounts to the validity of the security interest is made under 8 Del.C. § 160 (1978). Libco contends that Reliable's guaranty and grant of a security interest constituted a purchase of its own stock which impaired its capital and therefore was invalid under § 160.[6]

■ Initially, we note some hesitation in reaching the question of whether § 160 is applicable to this case. This is because Libco never raised this argument before the Bankruptcy Court, and as a result we are deprived of a ruling from Judge James on the question of whether Libco can assert the protections of § 160. Under such circumstances, parties are normally not allowed to raise arguments on appeal which were not raised below. *See Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1333–34 (7th Cir.), *cert. denied*, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977); *Lektro-Vend Corp. v. Vendo Corp.*, 545 F.2d 1050, 1059 (7th Cir. 1976), *rev'd on other grounds*, 433 U.S. 623, 97 S.Ct. 55, 50 L.Ed.2d 74 (1977). However, while we do not condone Libco's failure to present this argument to Judge James, the argument was presented by the trustee, so that Libco might reasonably have thought that it need not duplicate the trustee's arguments. Thus, even though we are forced to decide a question not presented below, whether Libco, as opposed to the trustee, can assert § 160, we find that Libco's failure to argue this point below is justifiable. *See generally Singleton v. Wulff*, 428 U.S. 106, 120–21, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Youakim v. Miller*, 425 U.S. 231, 96 S.Ct. 1399, 47 L.Ed.2d 701 (1976) (per curiam).

8 Del.C. § 160 (1978) provides, in pertinent part:

> (a) Every corporation may purchase, redeem, receive or otherwise acquire, own and hold, sell, lend, exchange, transfer or otherwise dispose of, pledge, use and otherwise deal in and with its own shares; provided, however, that no corporation shall:
>
> > (1) Purchase or redeem its own shares of capital stock for cash or other property when such purchase or redemption would cause any impairment of capital of the corporation . . . .

---

5. To be valid, a security agreement need only recite an agreement to create a security interest. No additional requirements exist. *See In re Amex-Protein Development Corp.*, 504 F.2d 1056, 1058–60 (9th Cir. 1974); *In re Rite-Cap, Inc.*, 7 B.R. 113 (Bkrtcy.D.R.I.1980); *In re Modern Engineering & Tool Co.*, 25 U.C.C.Rep. 580, 583–84 (Bank.Ct.D.Conn.1978); *Queen of the*

*North, Inc. v. Legrue*, 582 P.2d 144, 148 (Alaska 1978); *Peterson v. Ziegler*, 39 Ill.App.3d 379, 383–84, 350 N.E.2d 356, 360–61 (1976); *Estate of Hill*, 27 Or.App. 893, 557 P.2d 1367 (1976); *Kreiger v. Hartig*, 11 Wash.App. 898, 527 P.2d 493 (1974).

6. Reliable is a Delaware corporation.

On its face, § 160 does not seem to apply to this case. The restriction on purchase or redemption of stock that is urged by Libco seems not to apply to what Reliable did in this case. Reliable did not purchase or redeem its own stock, it merely created a security interest through a pledge of its equipment [7] that secured the purchase price of its stock. The restriction mentioned in § 160(a)(1) does not include pledges of stock, which, in contrast, are mentioned in the preceding sentence.

■ In response, Libco argues that Reliable did purchase its stock: "By guaranteeing Libco's agreement to purchase Reliable stock, Reliable was actually agreeing to purchase its own stock in the event that Libco failed to do so." [8] This is far from evident. A contract to guarantee a debt is much different than the principal contract of purchase which created the debt. A guarantor "makes a contract, distinct from the principal obligation, to be collaterally liable to the creditor if the principal fails to perform." 10 S. Williston, on Contracts § 1211, at 686–87 (W. Jaeger ed. 1967). Reliable never promised to purchase; it promised to pay the debt of another. Since the term "purchase" should be given its normal meaning under § 160, *In re Kettle Fried Chicken of America*, 513 F.2d 807, 810 (6th Cir. 1975); *see Alcott v. Hyman*, 42 Del.Ch. 233, 208 A.2d 501 (1965); a guaranty may very well not qualify as a purchase under § 160.

■ However, in one crucial respect a guaranty is like a contract of purchase. Once the guarantor pays a creditor, he steps into the shoes of the debtor whose debt he has paid and acquires that debtor's rights with respect to the obligation he has satisfied. This is the equitable doctrine of subrogation. *See, e.g., In re J. V. Gleason Co.*,

452 F.2d 1219 (8th Cir. 1971); *National Shawmut Bank v. New Amsterdam Casualty Co.*, 411 F.2d 843 (1st Cir. 1969); *Argonaut Insurance Co. v. C & S Bank of Tifton*, 140 Ga.App. 807, 232 S.E.2d 135 (1976); *United States Fidelity & Guaranty Co. v. First State Bank of Salina*, 208 Kan. 738, 494 P.2d 1149 (1972); *Jacobs v. Northeastern Corp.*, 416 Pa. 417, 206 A.2d 49 (1965). Once Reliable paid Leigh and Dusek, it would be subrogated to Libco's rights, and therefore would be the equitable owner of the Reliable stock. Thus, we assume, without deciding, that the guaranty executed by Reliable would cause Reliable to purchase its own stock within the meaning of § 160 should Libco default on its contract.

■ Libco contends that § 160 prohibits a corporation from purchasing its own stock when the purchase would impair its capital as of the date the price must be paid. This contention is correct. *See, e.g., McConnell v. Estate of Butler*, 402 F.2d 362, 366–67 (9th Cir. 1968); *In re Trimble Co.*, 339 F.2d 830, 842–43 (3d Cir. 1964); *Robinson v. Wangemann*, 75 F.2d 756 (5th Cir. 1935). However, we need not decide whether Judge James erred in making this determination, for we hold that Libco cannot avail itself of the protections of § 160 in order to challenge Leigh and Dusek's security interest.

The security agreement which Libco seeks to attack before this court was an essential part of the very transaction which enabled Libco to acquire Reliable's stock. The stock purchase agreement stated that Libco's obligation to pay the purchase price would be secured by Reliable's machinery and equipment; in fact this was included as a term of the contract Libco entered. Appellee's Appendix at 51, ¶ 3.[9] Thus, Libco freely consented to the security interest which Reliable granted to Leigh and Dusek.

**7.** A pledge is equivalent to the creation of a security interest. *See* Ill.Rev.Stat., Ch. 26, § 9–102 (1979).

**8.** In support of this assertion, Libco cites *Corbin v. Corbin*, 429 F.Supp. 276, 281–82 (M.D. Ga.1976). The citation is inapposite. *Corbin* held that a corporate officer, who used corporate funds to buy corporate stock in a case where there was no evidence that the corpora-

tion had loaned the money to the officer, was not acting for himself, but rather for the corporation.

**9.** The security agreement which Reliable had signed with Leigh and Dusek was appended as an exhibit to the stock purchase agreement. Appellee's Appendix at 97.

This is only natural, since without this security for its obligation, Libco would likely have never been able to acquire the Reliable stock.

■■■ Libco seeks to attack the validity of the very transaction which it freely and voluntarily entered in order to purchase Reliable's stock. This it cannot do. A party is estopped from asserting that a transaction which it freely entered and benefitted from does not now bind it because of its invalidity. It has long been the law that those who receive notice that a corporation will purchase its own stock and then fail to object to the transaction cannot subsequently complain that the transaction was illegal. *See In re Flying Mailmen Service, Inc.*, 539 F.2d 866 (2d Cir. 1976); *First Trust Co. v. Illinois Central R. Co.*, 256 F.2d 830 (8th Cir.) *cert. denied*, 249 U.S. 615, 39 S.Ct. 390, 63 L.Ed. 803 (1919); *Cross v. Beguelin*, 252 N.Y. 262, 266, 169 N.E. 378, 379 (1929); *Bolmer Brothers, Inc. v. Bolmer Construction Co.*, Sup., 114 N.Y.S.2d 530, 537–38 (1952); *Loveland & Co., Ltd. v. Doernbecher Manufacturing Co.*, 149 Or. 58, 39 P.2d 668 (1934); *Shoemaker v. Washburn Lumber Co.*, 97 Wis. 585, 591–92, 73 N.W. 333, 334–35 (1897).[10] Libco may not endorse the transaction at the time of the stock purchase only to repudiate it before this court because the transaction no longer serves its interest. Libco treated the security interest as valid and enforceable at the time of the stock purchase; it is bound to continue to so treat it before this court. *Cf. Hughes Masonry Co. v. Greater Clark County School Building Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) ("In short [plaintiff] cannot have it both ways. [It] cannot rely on the contract when it works to its advantage, and repudiate it when it works to [its] disadvantage." (brackets in original) (quoting *Tepper Realty Co. v. Mosaic Tile Co.*, 259 F.Supp. 688, 692 (S.D.N.Y.1966)).

All this is not to say that the trustee or other creditors could not have attacked the stock purchase under § 160. It appears they can. *See, e.g., In re Kettle Fried Chicken of America, Inc.*, 513 F.2d 807 (6th Cir. 1976); *Wright v. Heizer Corp.*, 503 F.Supp. 802, 810 (N.D.Ill.1980); *Cunningham v. Jaffe*, 251 F.Supp. 143, 146 (D.S.C. 1966); *In re International Radiator Co.*, 10 Del.Ch. 358, 92 A.2d 255 (1914); *Naples Awning & Glass, Inc. v. Cirou*, 358 So.2d 211 (Fla.Dist.Ct.App.1978); *Jackson v. Colagrussi*, 50 Wash.2d 618, 313 P.2d 697 (1957). However, these parties did not appeal the Bankruptcy Court's decision, and so we need not reach the merits of Libco's claim under § 160. We only hold that Libco's participation in the stock transaction precludes it from attacking that transaction in this proceeding.[11]

The judgment of the Bankruptcy Court is AFFIRMED.

---

10. *Cf. Avco Delta Corp Canada Ltd. v. United States*, 459 F.2d 436 (7th Cir. 1972) (Taxpayer is estopped from denying that a lien was placed on his property when he had earlier represented to the creditor that the lien was validly placed on his property at the time of the original transaction; *Bennett v. Propp*, 41 Del.Ch. 14, 187 A.2d 405 (1962) (Directors who ratified an illegal purchase of corporation's own stock are not liable when they acted in an emergency without knowledge of illegality, but director who did have advance information and should have known transaction was illegal is estopped from asserting this defense). *See generally* 6A W. Fletcher, Cyclopedia of Corporations § 2861 (Wolf rev. 1968). *See also Pasotti v. United States Guardian Corp.*, 18 Del.Ch. 1, 156 A. 255 (1931) (leaving questions of estoppel and waiver open).

11. Because of the view we take of this case, it becomes unnecessary to resolve a number of factual disputes the parties raise on appeal through Libco's motion to strike certain factual allegations in Leigh and Dusek's brief. Accordingly, the motion to strike is denied. However, we do admonish counsel for Leigh and Dusek for making a number of allegations which appear to find their basis not in the record, but rather in what counsel characterizes as "references" made before Judge Flaum in another proceeding, Appellees' Response to Motion to Strike ¶ 3, facts in the record of another case, *id.* ¶ 4, "records of the Bankruptcy Court" (though not the record in this case), *id.* at ¶ 6, and "fair and useful background material," *id.* at ¶ 9. Moreover, the allegations made in the brief are of doubtful relevance to this case. *See, e.g., id.* ¶¶ 3, 4, 7, 9.