*998
 
 CUDAHY, Circuit Judge.
 

 This case involves the enforceability of a security interest under Section 9-203(1) of the Uniform Commercial Code, Ill.Rev.Stat. ch. 26, § 9-203(1) (1981), and under Section 160 of the Delaware Corporation Law, Del. Code Ann. tit. 8, § 160 (1978). The appel-lees, Charles W. Leigh and Ervin F. Dusek, assert a lien upon the proceeds of the sale of collateral of the bankrupt, Reliable Manufacturing Corporation (“Reliable”). Both the bankruptcy judge and the district court granted summary judgment for Leigh and Dusek and against the appellant, Libco Corporation (“Libco”), of which Reliable is a wholly owned subsidiary. We affirm the judgment of the district court, although on grounds which are in some respects different from those on which its decision was based.
 

 I.
 

 Appellees, Charles W. Leigh and Ervin F. Dusek, are the former owners of Reliable Manufacturing Corporation, the bankrupt corporation involved in this case. On April 5, 1977, the appellant, Libco, bought Reliable from Leigh and Dusek in a transaction which has given rise to the litigation here. Libco, as buyer, signed a Stock Purchase Agreement in which it agreed to pay a total of $1,750,000 in exchange for all of the shares of Reliable stock. The money was to be paid in four installments, the last two of which, totaling $940,000, were due on January 81, 1979 and on January 31, 1980. The Stock Purchase Agreement specified that these two installments were to be secured by a security interest in all of the equipment, dies and molds of Reliable and that a Security Agreement to that effect was to be attached to the contract of sale. The transaction up to this point was straightforward, with the sellers financing the purchase of the Reliable stock, and securing their extension of credit by an interest in Reliable’s collateral.
 

 Apparently in fulfillment of the agreement that the last two installments of the stock purchase price be secured, both a Guarantee and a Security Agreement were attached to the Stock Purchase Agreement. The Guarantee of Libco’s obligation, whereby Reliable undertook to guarantee the debt of Libco to Leigh and Dusek, was executed by Leigh and Dusek, as officers of Reliable, to themselves, as individuals, for the last two installments. The Security Agreement which was also attached to the Stock Purchase Agreement secured this Guarantee. The Security Agreement was signed by Leigh on behalf of Reliable and granted to Leigh and Dusek a lien on all the machinery, equipment, tools and dies owned by Reliable as of the date of the Agreement. This Security Agreement was apparently the one referred to in the Stock Purchase Agreement, and it specified that it was intended to secure performance of the Guarantee by Reliable of the obligations of Libco. The security interest was perfected by filing a financing statement with the Illinois Secretary of State on April 8, 1977.
 

 In sum, the sales transaction entered into on April 5, 1977 consisted of a Stock Purchase Agreement between Libco, on the one hand, and Leigh and Dusek, on the other, a Guarantee running from Reliable to Leigh and Dusek, and a Security Agreement, granting a lien on Reliable’s equipment, to secure the Guarantee to Leigh and Dusek. On the same day, Leigh and Dusek each entered into a written employment contract with Reliable and Libco; each contract contained a covenant not to compete with Reliable. Leigh also, together with one Marvin Green, executed a lease and option to buy with respect to the premises on which the company was located, Leigh again signing in a dual capacity — both as landlord and on behalf of the tenant, Reliable.
 

 The amounts due under the Stock Purchase Agreement were never paid. In March of 1979, in response to a creditors’ petition, Reliable filed for bankruptcy under Chapter 11 of the Bankruptcy Act. On September 18, 1979, Reliable filed a complaint to sell its machinery and equipment free of all liens; the appellees responded by asserting their security interest in that equipment and moved for summary judg
 
 *999
 
 ment. Leigh and Dusek’s claim was contested by Reliable, the trustee, Libco, and the Creditors’ Committee. The bankruptcy court ordered that the machinery and equipment be sold; and it is the proceeds of that sale — $407,000—which are the subject of this lawsuit.
 

 Leigh and Dusek supported their motion for summary judgment with copies of the Stock Purchase Agreement, the Guarantee, the Security Agreement and the financing statement with respect to it filed with the Illinois Secretary of State, the lease and employment contracts, a Libco filing with the S.E.C. describing its purchase of Reliable and two statements of audits of Reliable. On this basis, the bankruptcy judge granted the motion for summary judgment in an order and opinion of November 21, 1979. Upon motions for reconsideration, the court again granted summary judgment on December 9, 1980, holding, despite Lib-co’s arguments to the contrary, that the Guarantee and Security Agreement were supported by adequate consideration, that they served a valid corporate purpose of Reliable and that they did not unlawfully impair Reliable’s capital.
 
 In re Reliable Manufacturing Corp.,
 
 No. 79 B 2152 (Bankr.N.D.Ill. Dec. 9, 1980).
 

 Libco appealed the decision of the bankruptcy court to the district court, arguing that 1) the Guarantee and security interest were invalid since they were not supported by consideration to Reliable, and 2) that Reliable’s Guarantee and grant of a security interest constituted a purchase of its own stock which impaired its capital and was therefore invalid under Section 160 of the Delaware Corporation Law. Del.Code Ann. tit. 8, § 160. Judge Marshall upheld the granting of summary judgment for the ap-pellees, but on grounds different from those which formed the basis for the decision of the bankruptcy court.
 
 In re Reliable Manufacturing Corp.,
 
 17 B.R. 899 (D.C.N.D.Ill.1981). First, he held that the value required by Ill.Rev.Stat. ch. 26, § 9-203(1) for the enforceability of a security interest need not flow to the debtor; thus the security interest was valid, despite the fact that the value given did not flow directly to Reliable. Second, Judge Marshall, assuming arguendo that Delaware Section 160 applied, held that Libco was estopped to attack the validity of a transaction which it had freely undertaken in order to purchase Reliable’s stock. In response to this estop-pel ruling, Reliable has intervened in the appeal to this court, arguing that it, unlike Libco, is not estopped to raise Section 160. Libco in its appeal challenges both the es-toppel holding and the finding that the security interest was a valid and enforceable one.
 

 Since the procedural posture of this case is that of a challenge to a motion granting summary judgment, we may uphold the judgment of the district court only if we find that the parties are entitled to judgment as a matter of law and that the opponents of the motion for summary judgment have failed to show that there is any genuine issue of material fact. Fed.R.Civ.P. 56(c). Given this posture, the issues for decision by this court may be summarized as follows: 1) Does the Security Agreement executed by Reliable and Leigh and Dusek (as to which a financing statement was duly filed) fulfill the requirements prescribed by Ill.Rev.Stat. ch. 26, § 9-203 for the enforceability of a security interest, when the value given under the Agreement flowed to a party other than the debtor? 2) Was the Guarantee given by Reliable to Leigh and Dusek illegal under Section 160 of the Delaware Corporation Law as a purchase of its own stock which impaired its capital? and 3) Was the Guarantee otherwise void as being ultra vires?
 

 II.
 

 Section 9-203(1) of the Uniform Commercial Code establishes the requirements for the enforceability of a security interest as follows:
 

 ... [A] security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless
 

 (a) the collateral is in the possession of the secured party pursuant to agreement,
 
 *1000
 
 or the debtor has signed a security agreement which contains a description of the collateral ... and
 

 (b) value has been given; and
 

 (c) the debtor has rights in the collateral.
 

 Ill.Rev.Stat. ch. 26, § 9-203(1). The creditors in this case, Leigh and Dusek, clearly gave value — the extension of credit necessary to finance the purchase of Reliable by Libco. Ill.Rev.Stat. ch. 26, § 1-201(44) (1981).
 
 [1]
 
 In fact, it is preeminently such a transaction — a financing arrangement— that Article 9 of the Code is designed to regulate.
 

 Libco contends, however, that the value given in fulfillment of Section 9-203 must be extended to the debtor, rather than to a third party. This argument is without merit. The purpose of the giving of value requirement of U.C.C. Section 9-203(1) would seem to be that the security interest not “attach” and become enforceable until some consideration has passed under an underlying transaction, creating an obligation which may properly be secured. The coming into effect of the obligation by the giving of value is thus made to trigger attachment of the security interest.
 
 See
 
 1 G. Gilmore,
 
 Security Interests in Personal Property
 
 §§ 10.3, 11.5 (1965). A security interest given in consideration for the obligation of a third party clearly effectuates this purpose and fulfills the requirements of the U.C.C. It is enough, in fact, that there be detriment to the secured party even if there is no benefit to the owner of the assets subject to the security interest.
 
 In re Terminal Moving & Storage Co.,
 
 631 F.2d 547, 550-51 (8th Cir.1980) (en banc).
 

 In this case, moreover, there was clearly an exchange of “value,” as that term is used in the relevant sections of the U.C.C. Section l-201(44)(d) states that “value” may consist in “any consideration sufficient to support a simple contract.” Ill.Rev. Stat. ch. 26, § l-201(44)(d). A benefit to a third party is clearly sufficient to support a simple contract in Illinois.
 
 See, e.g., Lauer v. Blustein,
 
 1 Ill.App.3d 519, 274 N.E.2d 868, 870 (1st Dist.1971);
 
 Ogren v. Graves,
 
 39 Ill.App.3d 620, 350 N.E.2d 249, 252 (2d Dist.1976). Libco here was a known and knowing beneficiary of the contract between Reliable and Leigh and Dusek.
 
 [2]
 
 Thus the security interest given by Reliable in consideration for Leigh and Dusek’s extension of credit to Libco fulfills the requirements of Ill.Rev.Stat. ch. 26, § 9-203 and is enforceable. We therefore approve the determination of the district court that the security interest of Leigh and Dusek is valid and enforceable.
 

 III.
 

 We turn now to the second major argument raised by appellants, that the Guarantee executed between Reliable and Leigh and Dusek is illegal and thus unenforceable under Section 160 of the Delaware Corporation Law.
 
 [3]
 
 By its terms, the Guarantee does not seem to fall within the scope of Section 160, which provides as follows:
 

 Every corporation may purchase, redeem, receive, take or otherwise acquire, own or hold, sell, lend, exchange, transfer or otherwise dispose of, pledge, use and otherwise deal in and with its own shares; provided, however, that no corporation shall:
 

 (1) Purchase or redeem its own shares of capital stock for cash or other property when the capital of the corpora
 
 *1001
 
 tion is impaired or when such purchase or redemption would cause any impairment of the capital of the corporation.
 

 [[Image here]]
 

 Nothing in this subsection shall invalidate or otherwise affect a note, debenture or other obligation of a corporation given by it as consideration for its acquisition by purchase, redemption or exchange of its shares of stock if at the time such note, debenture or obligation was delivered by the corporation its capital was not then impaired or did not thereby become impaired.
 

 Del.Code Ann. tit. 8, § 160. Reliable has not effected a purchase or redemption of its own stock. Libco argues, however, that Reliable’s agreement to guarantee the purchase price of its stock, secured by a lien on its major assets, amounted to a purchase of its own stock because “if the guarantee were enforced as Dusek and Leigh desire, Reliable would become the owner of its own stock, having paid for it with virtually all of the corporate assets.” Appellant’s Br. at lOn.
 

 Although it is questionable whether such a transaction constitutes a “purchase or redemption” of stock under this statute at all,
 
 [4]
 
 we believe that the appropriateness of applying Section 160 must be addressed in light of the purposes of that statutory provision. The prohibition against a corporation’s acquiring its own stock when to do so would impair its capital is intended to protect creditors.
 
 See, e.g., Propp v. Sadacca,
 
 175 A.2d 33, 38 (Del.Ch.1961),
 
 aff’d in part and rev’d in part,
 
 187 A.2d 405 (Del.1962). It is designed, in particular, to prohibit transactions by which a corporation may rearrange its capital structure so as to alter the assumed basis upon which creditors have extended credit and thereby essentially to defraud creditors by redistributing assets to shareholders. Such transactions amount, in the words of Judge Learned Hand, to “a method of secret distribution, against the deceit of which its creditors have absolutely no means of protection [because] [t]he fund which they have the right to rely upon has been surreptitiously taken from them.”
 
 In re Tichenor-Grand Co.,
 
 203 F. 720, 721 (S.D.N.Y.1913).
 

 In the case at hand, this statute is instead being raised by a present shareholder by way of defense against the claims of present creditors. Moreover, the financing agreement challenged under Section 160 is what enabled the present shareholders to purchase Reliable in the first place. By that sale Leigh and Dusek were transformed from shareholders into creditors; and if the transaction had resulted
 
 at that
 
 
 *1002
 

 time
 
 in an impairment of Reliable’s ability to pay
 
 prior
 
 creditors, there are strong policy arguments that Section 160 should apply. However, the bankruptcy judge in this case found that Reliable in fact had sufficient surplus at the time the Guarantee in question was executed. His conclusion was based upon the financial statements appended by Leigh and Dusek to their motion for summary judgment. These statements reveal that, as of March 31, 1977, Reliable had retained earnings of $956,674. The Guarantee and Security Agreement signed one week later covered a debt due from Libco of $940,000. These figures do not demonstrate an impairment of capital as of the date when the Guarantee in question was executed. Although Libco argues that the financial data contained in these reports is unreliable, it submitted no affidavits to that effect, as is necessary in order to defeat a motion for summary judgment. Fed. R.Civ.P. 56(e).
 

 Appellants argue, however, that the Section 160 prohibition should be applied to an executory agreement if capital is impaired on the date when payment under that agreement is due. In support of their argument, they direct our attention to cases in which courts have applied Section 160, or similar statutes in other states, to prohibit corporations from purchasing their own stock if the purchase would impair capital as of the date when the price must be paid.
 
 McConnell v. Estate of Butler,
 
 402 F.2d 362 (9th Cir.1968);
 
 In re Trimble Co.,
 
 339 F.2d 838 (3rd Cir.1964);
 
 Robinson v. Wangemann,
 
 75 F.2d 756 (5th Cir.1935). Such a rule may be sound in cases involving straightforward executory contracts to purchase stock from a corporation’s shareholders, where the extension of Section 160’s prohibition to executory agreements is dictated by the policy underlying that statute. But that is not the situation here. From the evidence before us, Reliable was adequately capitalized on the day its stock was transferred to Libco. From the date of the sale Leigh and Dusek ceased to be shareholders and stood purely in a creditor relationship to the corporation. Prior creditors were not defrauded by the transaction, since the corporation had adequate capital; and all future creditors were on notice that Reliable’s assets were encumbered, since a financing statement disclosing the Security Agreement was filed with the Secretary of State. The corporation, moreover, was essentially an incidental party to this transaction, which involved the sale of 100% of its stock rather than a reorganization of its capital structure. Last and perhaps most important, no other creditors are before us. The only parties seeking to raise Section 160 are Lib-go, who took advantage of the Guarantee in order to acquire Reliable’s stock, and Reliable itself, Libco’s wholly owned subsidiary. Under these circumstances, we conclude that the policies underlying Section 160 are not implicated in this ease. Interpreting the statute in light of its purposes, we therefore decline to apply it here.
 

 Our conclusion that Section 160 should not be applied here is buttressed by our reading of the 1974 amendment to the Delaware statute, which specifically allows corporations to incur such obligations, “if
 
 at the time
 
 such note, debenture or obligation was delivered by the corporation its capital was not
 
 then
 
 impaired
 
 or did not thereby become impaired.”
 
 (Emphasis supplied.) The language of this amendment strongly suggests that the relevant time at which to evaluate whether a corporation’s capital has been impaired is the time at which the challenged obligation was entered into. Although appellants argue that the phrase “thereby become impaired” contemplates an impairment of capital which takes place in the future, we think a likelier reading of this phrase is that it was intended to import a notion of causation: that is, the challenged agreement in fact
 
 caused
 
 the ultimate impairment of capital. There is no allegation here that the subsequent insolvency of Reliable bore any relationship to the terms of the agreement by which the corporation was purchased. The financial well-being of Reliable — a wholly owned subsidiary of Libco — presumably was thereafter the responsibility of its parent corpo
 
 *1003
 
 ration.
 
 [5]
 
 In short, we are not convinced that Reliable’s capital either “was” or “thereby became” impaired by the Guarantee signed on April 5,1977. We hold that the Guarantee was not prohibited by Del.Code Ann. tit. 8, § 160 and therefore affirm the granting of the motion for summary judgment.
 

 IY.
 

 Reliable, as intervenor in this lawsuit, has also raised the argument that the Guarantee which it signed on April 5, 1977 is void, because it was not given for a proper corporate purpose. This argument, presumably a contention that the guarantee was ultra vires, does not find any specific basis in the Delaware statute governing corporations. In fact, the Delaware Code specifically grants corporations the power to make contracts of guarantee and surety-ship.
 
 See
 
 Del.Code Ann. tit. 8, §§ 122(13), 123 (1978). Appellants do not cite, and our research does not reveal, any Delaware cases on this point.
 

 Reliable does, however, cite several cases, albeit relatively old, from other jurisdictions to the effect that a corporate guarantee given without consideration is ultra vires.
 
 Real Estate-Land Title & Trust Co. v. Commonwealth Bond Corp.,
 
 63 F.2d 237 (2d Cir.1933);
 
 In re Stucky Trucking & Rigging Co.,
 
 243 F. 287 (D.N.J.1917). Even assuming that an ultra vires defense exists under Delaware law, however, and that Reliable in fact was purely an accommodation party (both of which assumptions are questionable
 
 [6]
 
 ), we do not think that an ultra vires defense may be raised by Reliable in the circumstances of this case. The rule in the great majority of jurisdictions and incorporated in the Model Business Corporation Act is that, when an ultra vires contract has been executed by one party, that party may not defeat the contract on the ground that it was ultra vires. See 7A W. Fletcher,
 
 Cyclopedia of the Law of Private Corporations
 
 §§ 3467-3483 (1978);
 
 see also
 
 2 S. Williston,
 
 A Treatise on the Law of Contracts
 
 § 271 (3d ed. 1961 & Supp.1982).
 

 The prevailing rule is also a sound one in the facts of this case. Leigh and Dusek transferred ownership of all of the stock in their corporation to Libco and signed various contracts in return for a down payment and a guarantee of subsequent installments of the purchase price. Now Reliable, the other party to the Guarantee agreement, attempts to set up the defense of ultra vires in order to defeat liability on the promise it made in return for the transfer of stock to Libco.
 
 [7]
 
 Reliable, a wholly owned subsidiary of Libco, is thus attempting to escape its liability to a creditor of its parent corporation by arguing that a contract it executed was beyond its power. We hold that, under such circumstances, Reliable may not raise an argument based on ultra vires in order to defeat its obligation under the Guarantee.
 

 The judgment of the district court is hereby
 

 Affirmed.
 

 [1]
 

 . The extension of credit unquestionably falls within the applicable definition of “value” provided by Section 1-201(44) of the U.C.C.:
 

 ... a person gives “value” for rights if he acquires them
 

 (a) in return for a binding commitment to extend credit or for the extension of immediately available credit....
 

 Ill.Rev.Stat. ch. 26, § 1-201(44).
 

 [2]
 

 . The Security Agreement specifically recited that it was intended to secure the performance of the obligations of Libco to the secured parties, and the Security Agreement itself is mentioned as a requirement in the Stock Purchase Agreement between Libco and Leigh and Du-sek. In fact, all the agreements executed on April 5, 1977 seem to have formed part of a single transaction, the transfer of ownership of Reliable from Leigh and Dusek to Libco.
 

 [3]
 

 .Reliable is a Delaware corporation.
 

 [4]
 

 . The district court analyzed this question as one of suretyship law. As Judge Marshall correctly noted, the guarantor of another’s debts is subrogated to the rights of that debtor with respect to an obligation which the guarantor has discharged on his behalf.
 
 See, e.g., In re J.V. Gleason Co.,
 
 452 F.2d 1219 (8th Cir.1971);
 
 United States Fidelity & Guaranty Co. v. First State Bank of Salina,
 
 208 Kan. 738, 494 P.2d 1149 (1972). Under this doctrine, the equitable doctrine of subrogation, one who stands surety for the debt of another receives by operation of law an equitable lien which takes priority over subsequent security interests.
 
 Id.
 
 Hence Lib-co argued, and Judge Marshall assumed for the sake of argument, that Reliable’s Guarantee in the case at hand subrogated Reliable to Libco’s rights in Reliable’s own stock and thus made Reliable the equitable owner of its own stock. Appellants’ argument under Section 160 depends upon this assumption.
 

 This assumption, however, ignores the absence of an essential factual premise. The equitable lien arising out of the suretyship relation does not attach until the surety in fact
 
 pays
 
 the debt which has been guaranteed.
 
 See In re J.V. Gleason Co.,
 
 452 F.2d at 1224. Reliable, that is, would be in a position of equitable ownership of its own stock only
 
 after
 
 the obligation guaranteed had been satisfied. That essential event has not yet occurred. At the moment of the agreement Reliable merely obtained an equitable right which could be exercised when and if Reliable satisfied Libco’s obligation under the Stock Purchase Agreement. If it paid Libco’s debt, Reliable would have an equitable lien upon its own stock; and if Reliable were then to exercise that lien there would be a redemption of stock. Only at that moment would the prohibitions of Section 160 be activated. (Once the guaranteed obligation were paid by Reliable, however, Reliable’s equitable right in effect to redeem its own stock would presumably be constrained by the prohibitions of Section 160.)
 

 [5]
 

 . There is evidence that Libco paid itself a dividend of $100,000 within a year of its purchase of Reliable.
 

 [6]
 

 . Leigh and Dusek argue that Reliable did in fact receive consideration for the Guarantee, in the form of the lease, two employment contracts and covenants not to compete; and
 
 Miller’s Shoes & Clothing v. Hawkins Furniture & Appliances, Inc.,
 
 300 Minn. 460, 221 N.W.2d 113 (1974), is precedent for the proposition that a corporation signing a guarantee under such facts does not sign as an accommodation maker.
 

 [7]
 

 .In fact, all of the elements of a classic estop-pel situation are present: reliance by Leigh and Dusek upon the guarantee and a substantial change in their position, in that they gave up ownership in all of the stock of Reliable.