In re TERMINAL MOVING AND STORAGE CO., INC.

PUTNAM REALTY, INC., Appellee,

v.

TERMINAL MOVING AND STORAGE CO., INC., and Gene O'Daniel, Trustee, Appellants.

No. 79–1426.

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1980.

Decided July 28, 1980.

Before LAY, Chief Judge, HEANEY, BRIGHT, ROSS, STEPHENSON, HENLEY, McMILLIAN and ARNOLD, Circuit Judges.

LAY, Chief Judge.

The trustee in bankruptcy of Terminal Moving and Storage Co., Inc. appeals the decision of the district court finding Putnam Realty to have a valid security interest in the assets of Terminal Moving and Storage, a bankrupt corporation. We affirm the order of the district court.[1]

On January 19, 1973, Herbert E. Walker purchased all of the shares of Terminal

---

1. This en banc opinion stems from a rehearing after a panel of this court reversed the district court and held that a security interest had not attached under Arkansas law because no con-

sideration had been given and the sole stockholder's pledge of corporate assets was an ultra vires act.

Móving and Storage Co. (Terminal), the bankrupt Arkansas corporation, from Terminal Distribution Centers, Inc. (Terminal Distribution) for $100,000. Walker paid $10,000 in cash and financed the remainder by giving a promissory note in the amount of $90,000 to Terminal Distribution. On the same day as the purchase, Terminal, under the authority of the new president and sole shareholder, Walker, executed a security agreement in favor of Terminal Distribution pledging all of the assets of Terminal to secure the promissory note of Walker. Also on the same day, Terminal Distribution assigned its interest in the promissory note and security agreement to Central and Southern Companies, Inc. On July 9, 1974, Central and Southern assigned its interest in the note and the security agreement to Putnam Realty, Inc. The security agreement was at all times properly filed, thereby giving constructive notice to all subsequent creditors.

On March 22, 1978, Terminal filed a chapter XI plan for corporate reorganization. Putnam then filed a complaint seeking relief from an automatic stay on all lien foreclosures which had been issued by the bankruptcy court when the chapter XI proceeding began. Putnam sought relief from the stay in order to pursue its interests under the security agreement. The bankruptcy plan and complaint for relief were joined, and on December 1, 1978, the bankruptcy judge issued a memorandum decision stating that Putnam had no valid security interest in Terminal's assets, because the security interest was given without any consideration passing to the bankrupt. Putnam then appealed to the United States District Court for the Eastern District of Arkansas. The district court reversed the bankruptcy judge and found Putnam to have a valid security interest in the assets of Terminal.

The trustee argues on appeal that appellee's security interest is invalid because: (1) Walker's pledge of Terminal Moving's assets to secure a promissory note was an ultra vires act void under Ark.Stat.Ann. § 64–106(B) (Repl.1966); and (2) the security interest did not attach because "value" was not given as required under Ark.Stat. Ann. § 85–9–203(1)(b) (Supp.1979).[2] We disagree.

*Ultra Vires Act.*

Ark.Stat.Ann. § 64–106 (Repl.1966),[3] relating to ultra vires acts of a corporation, is patterned after section 6 of the Model Business Corporation Act.

The Arkansas legislature's committee report states: "Section 6 (§ 64–106) is a verbatim copy of the Model Act provision, except for the insertion of the words 'or derivative' (in subsection B)." The committee observed:

> The Model Act (followed as to this Section) [§ 64–106] eliminates ultra vires as a defense or cause of action except to the following extent.
>
> A. In a proceeding by a shareholder against the corporation to enjoin the doing of any act or acts or the transfer of real or personal property by or to the corporation.
>
> . . .
>
> B. In a proceeding by the corporation, whether acting directly or through a receiver, trustee, or other legal representative, or through shareholders in a representative or derivative suit against the incumbent or former officers or directors of the corporation.
>
> C. In a proceeding by the Attorney–General, as provided in this act [chapters 1–10 of this title], to dissolve the corporation, or in a proceeding by the Attorney–General to enjoin the corporation from the transaction of unauthorized business.

2. Section 85–9–203(1) provides in part:
> [A] security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless
> (a) . . . the debtor has signed a security agreement which contains a description of the collateral . . .
> (b) value has been given; and
> (c) the debtor has rights in the collateral.

3. Section 64–106 provides:
> Defense of ultra vires.–No act of a corporation and no conveyance or transfer of real or personal property to or by a corporation shall be invalid by reason of the fact that the corporation was without capacity or power to do such act or to make or receive such conveyance or transfer, but such lack of capacity or power may be asserted:

(i) It permits a shareholder to sue to enjoin the performance by the corporation of an ultra vires contract, the court having power to award damages (other than anticipated profits) resulting from such nonperformance; and ·

(ii) It permits a stockholder to bring a derivative suit for damages in favor of the corporation against officials who have diverted its business into nonprofitable ultra vires channels; and

(iii) It authorizes the filing of a suit by the Attorney–General to enjoin the ultra vires act or to dissolve the corporation under Section 87 of the Model Act [see § 64–905]. See also Sec. 89 [§ 64–907]. The committee gives a clear indication that the Arkansas legislature intended to follow the Model Act and thereby eliminate ultra vires as a defense to an action brought against the corporation under an existing agreement. *See also* 7A W. Fletcher, Cyclopedia of the Law of Private Corporations § 3447 (rev.ed.1978). As stated by Fletcher:

Creditors of the corporation, whose rights are not infringed by the ultra vires contract, cannot attack it. They cannot attack a corporate transaction as ultra vires unless its intent or effect is to fraudulently divert the corporate assets from their debts. It follows that ordinarily a subsequent creditor cannot object. So a trustee in bankruptcy ordinarily has no greater rights, as the representative of creditors, to attack a corporate transaction as ultra vires, than he has as a representative of the corporation.

*Id.* at § 3452 (footnotes omitted).

■ There is no allegation of fraud here. It is undisputed that on June 27, 1978, the financing statement covering office and plant equipment was executed and filed with the County Clerk and the Secretary of State. Subsequent creditors were on notice, therefore, of the pledge of assets. The secured party took possession of the stock, the shares of Allied Van Lines owned by Terminal Moving, on January 19, 1973, and it maintained possession from that time. Therefore, no creditor could have looked to any of those assets. It should be clear that the trustee in bankruptcy lacks standing under the controlling Arkansas law to assert an ultra vires defense against Putnam. In any event, the assent of all the stockholders to the security agreement bars any claim, in the right of the corporation, to defeat it. *Widett v. Pilgrim Trust Co.*, 336 Mass. 738, 148 N.E.2d 167 (1958). Therefore, we agree with the district court that the trustee's argument that Walker's pledge of corporate assets was an ultra vires act is not valid.

*The Giving of "Value."*

■ The trustee alternatively attacks the validity of the security interest because Terminal did not receive any consideration for the pledge of corporate assets. Under the Arkansas law a security interest is not enforceable unless "value" has been given. Ark.Stat.Ann. § 85–9–203(1)(b) (Supp.1979). Value is defined in part under the Arkansas Uniform Commercial Code to mean any consideration sufficient to support a simple contract. Ark.Stat.Ann. § 85–1–201(44)(d) (Supp.1979).

■ Consideration has been defined by the Arkansas Supreme Court as either a benefit accruing to a party or a detriment sustained by a party. *First Nat. Bank v. Hasty*, 183 Ark. 519, 36 S.W.2d 967 (1931); *Nakdimen v. First Nat. Bank*, 177 Ark. 303, 6 S.W.2d 505, *cert. denied*, 278 U.S. 635, 49 S.Ct. 32, 73 L.Ed. 552 (1928). Consideration for a contract may be found not only in benefits moving to the promisor but also in legal detriment suffered by the promisee. *United States v. Westmoreland Manganese Corp.*, 134 F.Supp. 898, 910 (E.D.Ark.1955). It is a detriment in the legal sense if the promisee at the request of the promisor and upon the strength of that promise performed any act which occasioned him any trouble or inconvenience and which he was not obliged to perform. 1 Williston, A Treatise on the Law of Contracts § 102A (3rd ed. W. Jaeger 1957).

■ In this case we hold that there was consideration sufficient to support a simple contract and therefore the security interest

attached. Terminal Distribution promised to extend credit to Walker to the extent of the $90,000 promissory note. In doing so it incurred a detriment to itself in extending credit in exchange for the pledge of Terminal's assets. The fact that the benefit of this agreement accrued to Walker, the sole stockholder of Terminal and not the corporation does not detract from the fact that the secured party gave value for the security interest. Since consideration sufficient to support a simple contract was present, value was given and the security interest attached. The focus of Ark.Stat.Ann. § 85–9–203(1)(b) which provides that a security interest does not attach unless "value has been given," is on whether the secured party *gives* value and not on whether the person whose assets were pledged received consideration.

There is no requirement under the U.C.C. that the entity whose assets are pledged must receive consideration. *See generally* J. White & R. Summers, Uniform Commercial Code § 23–4 (1972). Under the U.C.C., it is even permissible for a debtor who does not own the collateral to use it for security. Ark.Stat.Ann. § 85–9–112 (Repl.1966); *K.N.C. Wholesale, Inc. v. Awmco, Inc.*, 56 Cal.App.3d 315, 318–19, 128 Cal.Rptr. 345, 348 (1976). *See also* Ark.Stat.Ann. § 85–9–105(1)(d).

The security interest in this case did not interfere with the rights of those who were creditors prior to the existence of the security interest and, of course, subsequent creditors were on notice. Under these circumstances it is particularly appropriate that the security interest be held valid. *In re Southern Laundry, Inc.*, 101 F.Supp. 664 (S.D.Fla.1951); *see generally Miller's Shoes & clothing v. Hawkins Furniture & Appliances, Inc.*, 300 Minn. 460, 221 N.W.2d 113 (1974); *Widett v. Pilgrim Trust Co.*, 336 Mass. 738, 148 N.E.2d 167 (1958).

JUDGMENT AFFIRMED.

McMILLIAN, Circuit Judge, concurring.

I concur in the result, but write separately to emphasize the absence of any fraud in the facts presented in this case.