**In re VALLE FEED OF FARMINGTON, INC., Debtors.**

**Bankruptcy No. 84–00901(2). Motion No. 02.**

United States Bankruptcy Court, E.D. Missouri, E.D.

Oct. 14, 1987.

Robert J. Blackwell, St. Louis, Mo., for debtor.

Clinton B. Roberts, Farmington, Mo., for farmers.

A.W. Dieffenbach, Jr., Hillsboro, Mo., Carl R. Webb, Farmington, Mo., for Delmar and Stella Valle.

Thomas P. Fitz, President, Fitz Chevrolet, Buick, Inc., Farmington, Mo., Gilbert Leimer, Manager, Feeders Warehouse Co., Inc., Jackson, Mo., B.E. Lowe, President, West Plains Veterinary Supply, Inc., West Plains, Mo., Bruce H. McConnell, Regional Credit Manager, Wayne Feed Div., Continental Grain Co., East St. Louis, Ill., Rolla Gordon, President, Mercantile Bank of Farmington, Terry Boyle, MFA Exchange, Robert W. Francis, Loan Officer, St. Francois County Sav. & Loan, Farmington, Mo., for Creditors' Committee.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### INTRODUCTION

Valle Feed of Farmington, Inc. ("Valle") filed its voluntary Chapter 11 case in this District on May 24, 1984. Thereafter, Farmers Production Credit Association, formerly known as Farmington Production Credit Association ("Farmers"), filed a Motion for relief from the automatic stay in which it requested authority to foreclose on allegedly secured property in Valle's possession. Valle contested Farmers' Motion on the theory that Farmers had failed to properly perfect its lien on the subject property. After a hearing on April 24, 1985, the parties filed briefs and the Court took the matter under submission. Based upon the evidence adduced at the hearing, the argument of counsel, and the record as a whole, the Court makes the findings of fact and conclusions of law set forth below and this date rules in favor of Farmers.

### FINDINGS OF FACT

1. From 1973 to its closing in January, 1985, Valle operated a feed store in Farmington, Missouri.

2. At all times relevant herein, G. Joseph Stocker was Valle's President, while his wife, Carolyn G. Stocker was Valle's Secretary. Together the Stockers also owned 100 percent of Valle's stock.

3. In addition to owning and operating Valle, the Stockers also engaged in a separate hog business with their partners Carl R. Webb and Mignon G. Webb. Not surprisingly, the business purchased its hog feed from Valle.

4. In order to finance the hog business, the Stockers and Webbs from time to time borrowed money from Farmers. While Valle never executed any promissory notes payable to Farmers, on May 29, 1981, Valle adopted a corporate resolution which authorized and empowered Valle to "pledge certain assets of the corporation as collat-

eral to the FARMINGTON PRODUCTION CREDIT ASSOCIATION, in connection with a loan that is in the name of CARL WEBB and JOE STOCKER." The resolution specifically authorized Valle's President and Secretary to "give as collateral two nine ton grain bins, four sixteen ton grain bins, two feed augers, one twenty-two ton liquid supplement tank, and three ton tank and meter which is mounted on a truck." The resolution further authorized the President and Secretary to "sign all necessary papers to pledge these assets as collateral, such as fixture liens, financing statements and security agreements."

5. On May 29, 1981, Valle executed a Farm Security Agreement wherein it granted Farmers a security interest in the following collateral:

2 Shuld 80D6 Bulk Feed Tanks, Mfr. No. 21101–R

4 Shuld 90D9 Bulk Feed Tanks, Mfr. No. 7331

1 Mid South Steel Liquid Storage Tank, 4,174 Gal. Capacity

2 Snow Co. Grain Augers

1 Roper Liquid Supplement Pump and Meter

6. On June 2, 1981, Valle executed a Financing Statement and Security Agreement granting Farmers a security interest in the following collateral:

2 Schuld 80D6 Bulk feed tanks Schuld Mfr. No. 21101–R

4 90D9 Schuld Feed tanks Mfr. No. 7331

1 Midsouth Steel liquid storage tank 4,174 gal. cap.

This document was filed on June 2, 1981 in the Office of the Recorder of Deeds of St. Francois County, Missouri.

7. On June 1, 1981, a Financing Statement executed by Valle encumbering "grain bins, feed storage bins, liquid supplement tanks, feed handling equipment" was filed in the Office of the Recorder of Deeds of St. Francois County, Missouri.

8. On June 2, 1981, a Financing Statement executed by Valle and covering "grain bins, feed storage bins, liquid sup-plement tanks, feed handling equipment" was filed in the office of Missouri's Secretary of State.

9. On May 11, 1983, Valle executed an amendment to the May 29, 1981 Farm Security Agreement and granted Farmers a security interest in the following collateral:

N.H. 354 Grinder Mixer with Intake Auger &

20' Discharge Auger SN 26898

3 7–ton Schuld Bins 70D6 with 6 Grain Augers

(3–6") and (3–4")

This amendment to the Security Agreement was signed without Valle's corporate seal by "G. Joseph Stocker, Pres." and did not bear the corporate secretary's attestation or signature.

10. Since the filing of this Chapter 11 case on May 24, 1984, the Court has authorized Debtor to sell some of the disputed collateral with the proceeds of these sales and the remaining collateral to be subject to this Court's order herein.

11. Any of the foregoing findings of fact deemed to be conclusions of law are hereby incorporated into the Conclusions of Law.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(G) and (K), which the Court may hear and determine.

2. Valle contests Farmers' Motion for relief from the automatic stay solely on the theory that Farmers' lien is not valid. Valle has three arguments against the validity of Farmers' lien. First, Valle attacks the validity of Farmers' lien because it did not receive any consideration for the pledge of Valle's corporate assets. The Court rejects this argument.

■ It is true that under Missouri law, a security interest cannot attach unless value

has been given. Section 400.9–204(1), R.S.Mo. It is not true, however, that the entity whose assets are pledged must receive the consideration for doing so; for in Missouri, "a person gives 'value' for rights if he acquires them ... in return for any consideration sufficient to support a simple contract." Section 400.1–201(44)(d), R.S.Mo. "Under the common law of Missouri, consideration sufficient to support a simple contract may consist either of a detriment to the promisee or a benefit to the promissor." *In re Windle,* 653 F.2d 328, 331 (8th Cir.1981), *citing Wells v. Hartford Accident and Indemnity Co.,* 459 S.W.2d 253 (Mo.1970). In this case, Valle promised to and did extend credit to the Stockers for their hog business. In doing so, Valle incurred a detriment to itself in extending credit in exchange for the pledge of Valle's assets. The fact that the benefit of this agreement accrued to the Stockers, the sole shareholders of Valle, not the corporation, does not detract from the fact that the secured party gave value for the security interest. Since consideration sufficient to support a simple contract was present, the Court holds that value was given and Farmers' security interest attached. *See, In re Terminal Moving and Storage Co., Inc.,* 631 F.2d 547, 550–51 (8th Cir.1980) (Under U.C.C. there is *no* requirement that the entity whose assets are pledged must receive consideration).

3. Valle's second argument against the validity of Farmers' lien is that some of the underlying security documents were improperly executed by Valle. The Court also rejects this argument.

■ Valle notes that the 1983 amendment to the 1981 Security Agreement, although signed by "G. Joseph Stocker, Pres.," was not affixed with the corporate seal and did not bear the corporate secretary's attestation or signature. The Court, however, does not find any requirement in Missouri's Uniform Commercial Code requiring such a corporate seal or the corporate secretary's signature. Moreover, when, as here,

"a contract with a corporation which is merely ultra vires, and not otherwise illegal either because of its being expressly prohibited or because of its being contrary to public policy, has been fully executed by one of the parties, so that the other party has received the consideration for his or its promise, either in money, property, or services, the party on whose part the contract has been executed may maintain an action upon it, and the other party cannot defeat the action by pleading that the contract is ultra vires. It has been so held both in actions by the corporation, and in actions by the other party against the corporation."

7A Fletcher Cyc Corp., § 3473 (PermEd 1978); *see also, Smith v. Universal Finance Corp.,* 137 S.W.2d 489, 492 (Mo.App. 1940). The Court, therefore, holds that any failure by Valle to observe the corporate formalities in executing the security documents does not affect the validity of Farmers' lien upon the collateral.

■ 4. Valle's third argument against the validity of Farmers' lien is that the Financing Statements filed in June, 1981 insufficiently described the collateral pledged on May 11, 1983. The Court also rejects this argument.

Under Missouri law "any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described." Section 400.9–110, R.S.Mo. Upon review of the collateral listed in the May 11, 1983 Security Agreement and the Financing Statements filed in June, 1981, the Court is of the opinion that the 1981 Financing Statements do reasonably identify the collateral. The Court, therefore, holds that Farmers has a valid lien upon the collateral pledged on May 11, 1983.

5. The stay will be modified to permit Farmers to close its security interest in any of the collateral identified in the aforesaid Security Agreements presently in Debtor's possession and any proceeds from the sale of such collateral presently in Debtor's possession will be ordered turned over to Farmers forthwith.

6. Any of the foregoing conclusions of law deemed to be findings of fact are hereby incorporated into the Findings of Fact.