**In re PRODUCT DESIGN AND FABRICATION, INC., Debtor.**

**Harry R. TERPSTRA, Trustee, Plaintiff,**

v.

**John P. MICHELOSEN, Jr., Defendant.**

**Bankruptcy No. 92–11526LC.**

**Adv. No. 93–1148KC.**

United States Bankruptcy Court, N.D. Iowa.

Nov. 21, 1994.

11 U.S.C. § 523(a)(6) (1995).

Harry R. Terpstra, Cedar Rapids, IA, for plaintiff.

Michael Dunbar, Waterloo, IA, Steven Kroff, Palo Alto, CA, for defendant.

## ORDER RE: TRUSTEE'S COMPLAINT TO AVOID TRANSFERS

WILLIAM L. EDMONDS, Chief Judge.

The matter before the court is the final trial of the Trustee's complaint to avoid transfers to John P. Michelosen, Jr. pursuant to 11 U.S.C. §§ 544 and 547. Trial was held September 13, 1994, in Cedar Rapids, Iowa. Joseph A. Peiffer appeared for the Trustee. Michael C. Dunbar and Steven Kroff, admitted *pro hac vice,* appeared for Michelosen. The court now issues its findings of fact and conclusions of law as required by Fed. R.Bankr.P. 7052. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(F) and (K).

### Findings of Fact

Product Design and Fabrication, Inc. (PDF) was a manufacturer of agricultural equipment. Its primary product was a seed corn detassler. PDF was also in the beginning stages of the manufacture of a high clearance sprayer and a square baler. In late 1991, PDF lost its primary source of operating capital and began to look for alternate financing. Irvin Janey, president of PDF, ordered an appraisal of PDF's machinery and equipment. Craig C. Hilpipre performed the appraisal and made a written report dated May 15, 1992 (the Hilpipre appraisal). The Hilpipre appraisal did not include any of PDF's inventory. PDF used the Hilpipre appraisal, which showed a total value of $314,434.00, to solicit operating funds from investors.

PDF had discussions with Michelosen about investing in the company. On June 30, 1992, Michelosen met at PDF's facility with Janey and Richard Rank, chief financial officer of PDF. At that meeting Michelosen and Janey, as president of PDF, executed a "Short Term Financing Agreement" under which Michelosen agreed to lend PDF $100,000. The Financing Agreement further provided:

> These funds will be secured by the machinery and equipment listed in the appraisal performed by the Hilpipre Auction Company ... dated May 15, 1992, totaling $314,434.00. PDF agrees to file a [financing statement] to secure this machinery and equipment.

Exhibit 1–A. Michelosen wrote a check to PDF on June 30, 1992 in the amount of $100,000. PDF deposited the funds in its Firstar Bank account the same day. Exhibit 9–A.

The Financing Agreement was delivered to Robert Downer, PDF's corporate attorney. Downer prepared a security agreement on an Iowa State Bar Association form (Security Agreement). Exhibit 30. The first paragraph of the Security Agreement states that PDF grants Michelosen a security interest "in the property described in the paragraphs checked below." A check appears in the box labeled "inventory." The words "an inventory of which is attached hereto as Exhibit "A" and by this reference made a part hereof" are typed as an insert following the checked line. Exhibit A to the Security Agreement is the Hilpipre appraisal.

The second paragraph of the Security Agreement states that the security interest secures payment of the June 30, 1992 Short Term Financing Agreement together with all other of PDF's obligations to Michelosen including future advances. Paragraph 8(b) of the Security Agreement provides that Michelosen "shall not be deemed to have waived any of [his] rights hereunder or under any other agreement, instrument or paper signed by [PDF] unless such waiver be in writing and signed by [Michelosen]...."

On July 24, 1992, Downer sent PDF the original and one copy of the Security Agreement, with instructions to sign both the original and the copy. Exhibit 5. Janey signed the documents the same day he received them from Downer. He did not change the date of the Security Agreement, which was typed in as June 30, 1992. On July 28, 1992, Rank sent Michelosen a signed Security Agreement, a copy of a form UCC–1 financing statement, and Exhibits A, B and C. Exhibit A sent to Michelosen was the Hilpipre appraisal. Exhibit 7.

On July 23, 1992, Michelosen and Marty Sixt, chairman of PDF, executed a second Short Term Financing Agreement in the same form as the agreement executed June 30, but with handwritten changes. Michelosen agreed to lend PDF an additional $50,000. The language relating to a security interest in machinery and equipment was unchanged. Exhibit 3–A. Michelosen and Sixt are both California residents; the second Financing Agreement was executed in California. The second Financing Agreement was sent by overnight courier to PDF with a check dated July 23, 1992 in the amount of $50,000. PDF deposited the funds in its bank account July 27, 1992. Exhibit 10–A.

On August 1, 1992, Michelosen and Sixt executed a third Short Term Financing Agreement, again in the same form but with handwritten changes. The agreement stated that Michelosen "will loan PDF funds in the amount of $250,000." A handwritten paragraph at the end of the form indicates that the agreement was intended to "supersede and consolidate" the two previous loans and to provide for a new loan of $100,000. Exhibit 4–A. Michelosen wrote a check to PDF dated August 9, 1992 in the amount of $100,000. PDF deposited the funds in its bank account August 10, 1992. Exhibit 11–A. The check was returned for insufficient funds but was honored on a later date.

On August 7, 1992, a financing statement covering PDF's equipment was filed with the Iowa Secretary of State on behalf of Michelosen. Exhibit 8.

On August 14, 1992, PDF filed a Chapter 11 bankruptcy petition. At the time of filing, PDF had assets of approximately $800,000 and liabilities of more than $2.2 million.

PDF had been "balance sheet insolvent" for at least a year before the bankruptcy filing. The case converted to Chapter 7 on September 15, 1993. The Chapter 7 trustee liquidated all the property of PDF and deposited the proceeds of sale. The property sold included machinery, equipment and inventory.

### Discussion

The trustee's complaint makes two claims. First, that because the "security agreement" described inventory, not machinery or equipment, Michelosen did not obtain a security interest in PDF's equipment and, therefore, may make no claim to the proceeds of sale. Second, the trustee argues that even if Michelosen obtained security interests in debtor's machinery and equipment, the perfections of the interests, as it relates to two of the three loans, are avoidable as preferential transfers under 11 U.S.C. § 547(b). Michelosen contends that he has unavoidable perfected security interests in the proceeds of the sale of machinery and equipment.

### Perfected Security Interest in Equipment

The first issue is whether PDF gave Michelosen a security interest in its equipment. In order for a security interest to attach, the debtor must sign a security agreement "which contains a description of the collateral." Iowa Code § 554.9203(1)(a). The test of sufficiency of a collateral description is that of reasonable identification. *First State Bank v. Shirley Ag Service, Inc.,* 417 N.W.2d 448, 451 (Iowa 1987); Iowa Code § 554.9110. The description must do the job assigned to it; it must "make possible the identification of the thing described." *First State Bank of Nora Springs v. Waychus,* 183 N.W.2d 728, 730 (Iowa 1971).

The form Security Agreement describes the collateral as:

All of Debtor's inventory now owned or hereafter acquired[,] an inventory of which is attached hereto as Exhibit "A" and by this reference made a part hereof.

The trustee argues that in interpreting the contract's description of collateral the court should stop reading after the word "inventory." Apparently, Exhibit A, the Hilpipre appraisal, was not attached to the Security Agreement document in PDF's files. Exhibit 30, which bears an original signature by Janey, did not have staple holes. The court believes this fact is not significant for purposes of whether Michelosen had a security interest in equipment. Downer prepared two Security Agreements for signature so there would be duplicate originals. Even if no counterpart of Exhibit 30 had the appraisal stapled to it, the Security Agreement on its face would be incomplete without the exhibit. Incorporation of Exhibit A by reference shows that the complete expression of the agreement includes the exhibit. A security agreement serves a statute of frauds function rather than notice to third parties. *Shirley Ag Service,* 417 N.W.2d at 451. The parties to the Security Agreement knew what the collateral was. Exhibit A was an identifiable document in existence at the time the Security Agreement was executed. The information on the exhibit was part of the inducement for the loan. Both PDF and Michelosen had copies of the appraisal. PDF prepared the Security Agreement documents, and Rank sent a complete set of the documents to Michelosen.

Collateral may be described by means of incorporation by reference to other identifiable documents. *In re Nickerson & Nickerson, Inc.,* 452 F.2d 56, 9 U.C.C.Rep.Serv. 1266 (8th Cir.1971) (security agreement referring to "attached schedules" reasonably identified collateral); *Nolden v. Plant Reclamation (In re Amex–Protein Development Corp.),* 504 F.2d 1056, 15 U.C.C.Rep.Serv. 286 (9th Cir.1974) (note referencing collateral "as per invoices" created security interest); *Mitchell v. Shepherd Mall State Bank,* 458 F.2d 700, 10 U.C.C.Rep.Serv. 737 (10th Cir. 1972) (security agreement used attached exhibit to describe collateral). The case *Matter of Martin Grinding & Machine Works, Inc.,* 793 F.2d 592 (7th Cir.1986), cited by the trustee, is not to the contrary. In *Martin Grinding,* the court found the security agreement unambiguously gave a security interest in machinery, equipment, furniture and fixtures. The court did not allow extrinsic evidence to enlarge the security interest to include inventory and accounts receivable. *Id.* at 595. The additional typewritten language

on the face of the Security Agreement executed by PDF expressly incorporates Exhibit A into the description of collateral. Therefore, the court finds that the description of collateral includes all items listed on the Hilpipre appraisal.

■ The items on the appraisal are PDF's machinery and equipment. There is no inventory on the list. The terms "inventory" and "equipment" are mutually exclusive. Iowa Code § 554.9109(2) and (4) and Official Comment 2. Thus, the collateral description is ambiguous because the term "inventory" is inconsistent with the classification of items in the appraisal. The ambiguity is whether the parties intended the term "inventory" to modify the list in some way or whether the parties intended to give a security interest in all items on the appraisal. Extrinsic evidence is admissible to discover the intent of the parties to a contract when its terms are ambiguous. *Anderson v. Aspelmeier, Fisch, Power, Warner & Engberg,* 461 N.W.2d 598, 600 (Iowa 1990). In *American State Bank v. Swearingen (In re Swearingen),* 27 B.R. 379 (Bankr.D.Kan.1983), cited by the trustee, the court stated that the parties' intent was "immaterial" because the court found the security agreement complete and unambiguous. *Id.* at 383. Because the Security Agreement signed by PDF is ambiguous in its description of collateral, the court will consider other evidence to determine the parties' intent.

Janey testified that PDF did not intend to create a security interest in inventory. Its intent was to give a security interest in all items listed in the appraisal. The Security Agreement's reference to the June 30, 1992, Financing Agreement is consistent with Janey's testimony. The Financing Agreement shows that the parties intended to secure the loan with PDF's machinery and equipment as listed on the Hilpipre appraisal. The court concludes that the Security Agreement creates a security interest in PDF's machinery and equipment included in the Hilpipre appraisal.

■ The Hilpipre appraisal included vehicles. A notation of a security interest in favor of Michelosen was not placed on the titles of any motor vehicles which were PDF's equipment. The court finds and concludes that Michelosen did not have a perfected security interest in titled motor vehicles which were equipment. See Iowa Code § 554.9302(3)(b). The transfer of the security interest in vehicles to Michelosen is avoidable by the trustee pursuant to 11 U.S.C. § 544. However, the financing statement filed August 7, 1992 gave Michelosen a perfected security interest in the machinery and equipment perfectible by filing. It is unnecessary for the court to make findings regarding perfection as to particular items on the appraisal.

■ The court also concludes that each Financing Agreement, standing alone, is sufficient to constitute a security agreement giving Michelosen a security interest in PDF's machinery and equipment. The Financing Agreements are signed by the debtor and contain a description of the collateral. Iowa Code § 554.9203(1)(a). The parties intended to make a secured loan. Specific "words of grant" are not necessary to show an intention to create a security interest. *Bossingham v. Bloomington Production Credit Association (In re Bossingham),* 49 B.R. 345, 349–50 (S.D.Iowa 1985), *aff'd* 794 F.2d 681 (8th Cir. 1986). The Financing Agreement documents show an intent to "create or provide for a security interest." Iowa Code § 554.9105(1)(*l* ).

The trustee cites *Royal Bank & Trust Co. v. Pereira (In re Lady Madonna Industries, Inc.),* 99 B.R. 536 (S.D.N.Y.1989), for the proposition that the existence of the "Security Agreement" prevents the court from considering other documents as security agreements. In *Lady Madonna,* the debtors had signed two security agreements covering "accounts receivable, contract rights ... and general intangibles relating thereto or arising therefrom." Prior to signing the security agreements, the parties had executed a commitment letter covering "all assets" of Lady Madonna Industries. The *Lady Madonna* case does not stand for the proposition that a court cannot consider multiple security agreements because the case itself involved two valid security agreements. Each security agreement contained a "non-merger

clause" which preserved the creditor's rights under previous agreements. PDF's Security Agreement contains a "non-waiver clause" (Exhibit 30, ¶ 8(a)) that preserves Michelosen's rights under prior agreements. In closing argument, counsel for the trustee conceded that, standing alone, the Financing Agreements would meet the requirements of a security agreement. The court in *Lady Madonna* found that the commitment letter alone did not qualify as a security agreement and would not permit the creditor to use the letter to expand its security interest. The court stated:

> [c]ases considering the extent of a security interest where there is a conflict in the collateral descriptions in the loan documents have generally held that where there is a security agreement complete on its face, the courts will not refer to other documents to expand the scope of the security interest unless the security agreement itself refers to those other documents.

99 B.R. at 542, quoting *In re H & I Pipe and Supply Co., Inc.*, 44 B.R. 949, 950 (Bankr. M.D.Tenn.1984). The *Lady Madonna* case is distinguishable, therefore, because the collateral description in PDF's Financing Agreement does not conflict with the Security Agreement, the Financing Agreement alone meets the requirements of a security agreement, and the Security Agreement refers on its face to the Financing Agreement. The court concludes that PDF gave Michelosen a security interest in its equipment under the Financing Agreements as well as the Security Agreement.

### Preferential Transfers

■ The next issue is whether the transfers to Michelosen constituted avoidable preferential transfers under 11 U.S.C. § 547(b). The parties agree that the transfers were made to Michelosen within 90 days before the petition filing date while PDF was insolvent, and that the transfers would enable Michelosen to receive more than he would receive in a Chapter 7 distribution if the transfers had not been made. The issue is whether the transfers to Michelosen were on account of an antecedent debt, which requires the court to determine when the transfers were made.

■ For the purposes of preference law, 11 U.S.C. § 547(e) determines the time at which a transfer is deemed to have been made. The transfers at issue are the creation of security interests. 11 U.S.C. § 101(58) ("transfer" includes retention of title as a security interest). Under § 547(e), if a security interest is perfected pre-petition, such a transfer is made:

> (A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time; [or]

> (B) at the time such transfer is perfected, if such transfer is perfected after such 10 days.

11 U.S.C. § 547(e)(2)(A) and (B). State law determines when a transfer of property is perfected. *Bergquist v. Anderson–Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.)*, 850 F.2d 1275, 1277 (8th Cir.1988). The Bankruptcy Code does not define when a transfer takes effect; that issue is also governed by state law. *Johnson v. First National Bank of Montevideo, Minnesota*, 719 F.2d 270, 273 (8th Cir.1983) (in the absence of conflict with bankruptcy law, state law governs questions of property rights), *cert. denied* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). A security interest is enforceable between the debtor and creditor when the parties meet the requirements for attachment. Iowa Code § 554.9203(1). The court concludes that a transfer creating a security interest takes effect between a debtor-transferor and the creditor-transferee under § 547(e)(2) when the security interest attaches under state law. Under Iowa law, a security interest attaches when: (1) the debtor has signed a security agreement which contains a description of the collateral; (2) value has been given; and (3) the debtor has rights in the collateral. Iowa Code § 554.9203(1). After comparing the date of attachment and the date of perfection, the court can then determine the time of transfer under 11 U.S.C. § 547(e)(2).

■ It is undisputed that PDF had rights in the collateral, the equipment listed on the Hilpipre appraisal, prior to the three loans. The court must decide when Michelosen gave

value and when PDF signed a security agreement describing the collateral. The requirement that value be given focuses on what the creditor has given, rather than on what the debtor has received. Iowa Code § 554.9203(1)(b); *Putnam Realty, Inc. v. Terminal Moving & Storage Co., Inc. (In re Terminal Moving & Storage Co., Inc.)*, 631 F.2d 547, 551, 29 U.C.C.Rep.Serv. 679, 683 (8th Cir.1980) (interpreting identical language under Arkansas law). Value is defined for the purposes of Chapter 554, Iowa's enactment of the Uniform Commercial Code, to include "a binding commitment to extend credit" or "any consideration sufficient to support a simple contract." Iowa Code § 554.1201(44)(a) and (d). Under this definition, Michelosen gave value at the time each Financing Agreement was signed by promising to lend additional funds. *Terminal Moving & Storage*, 631 F.2d at 550–51, 29 U.C.C.Rep.Serv. at 683 (secured party gave value by promise to extend credit, consideration sufficient to support a simple contract); *State Bank & Trust Co. of Beeville v. First National Bank of Beeville*, 635 S.W.2d 807, 33 U.C.C.Rep.Serv. 1775 (Tex.App.1982) (bank gave value when it signed a note, committing itself to lend, not the next day when it wrote a check). Thus, the dates PDF received checks from Michelosen are not determinative, much less the dates the checks were later honored. Michelosen gave value on the dates of the three Financing Agreements: June 30, 1992, July 23, 1992, and August 1, 1992.

As discussed above, both the Security Agreement and the Financing Agreements qualify as enforceable security agreements. The court will use the first document effective as to each of the three loans to determine when PDF signed a security agreement. The parties signed a security agreement as to the first loan of $100,000 on June 30, 1992, the date of the first Financing Agreement. Michelosen gave value on that date. PDF had an interest in the equipment prior to that time. The security interest attached on June 30, 1992 and was perfected August 7, 1992, more than ten days after that date. Therefore, under § 547(e), the transfer in connection with the first loan took place on August 7, 1992.

The analysis is similar for the second loan. Michelosen gave value and PDF signed a security agreement on the date of the second Financing Agreement, July 23, 1992. Perfection took place on August 7, 1992, more than ten days after that date. The transfer in connection with the second loan also took place August 7, 1992.

By the time of the third loan, PDF had already signed a security agreement covering future advances. The Security Agreement was signed, at the latest, by July 28, 1992, the date Rank sent Michelosen the security agreement documents. Exhibit 6. Michelosen gave value on August 1, 1992, by promising to loan an additional $100,000. The third transfer was effective between the parties August 1. Because the transfer was perfected less than ten days later, the third transfer is deemed to have taken place on August 1, 1992.

Having established the dates of transfer, the court can determine whether the transfers were made on account of antecedent debt under § 547(b)(2). Debt was created at the time each Financing Agreement was executed by PDF. See 11 U.S.C. §§ 101(12) ("debt" means liability on a claim) and 101(5) (defining "claim"). The first two transfers were preferences because the date of each transfer was August 7, 1992 for debt incurred June 30 and July 23, respectively. The third transfer was not a preference as to the additional $100,000 loan because the debt arose on August 1, 1992, the same date as the transfer. The third Financing Agreement, which "superseded and consolidated" the first two loan agreements, did not affect the preferential status of the first two loans. Although a security interest given for pre-existing debt is given for value under Iowa Code § 554.1201(44)(b), the third Financing Agreement did not affect the date the debt arose as to the first two loans. The transfer as to those loans was still on account of antecedent debt.

Michelosen did not plead an affirmative defense. The trustee concedes that if Michelosen perfected a security interest in equipment within ten days, it is not an avoidable transfer. The court notes that this result is

810

not because of the ten-day requirement in 11 U.S.C. § 547(c)(3), which applies only to purchase money security interests. The transfer as to the third loan was not a preference in the first instance because of the timing of both the loan and the perfection of the security interest. It is unnecessary to show an affirmative defense to prevent the trustee's avoidance. Therefore, judgment shall enter in favor of the trustee as to the first two loans. As to the third loan, Michelosen has an unavoidable perfected security interest in proceeds of equipment in the amount of $100,000.

*ORDER*

IT IS ORDERED that the security interests of John Michelosen in connection with loans to Product Design and Fabrication, Inc. made June 30, 1992, and July 23, 1992, in the amounts of $100,000 and $50,000, respectively, are avoided.

IT IS FURTHER ORDERED that Michelosen's security interest in titled vehicles which were PDF's equipment is avoided.

IT IS FURTHER ORDERED that Michelosen's perfected security interest in PDF's equipment in connection with a loan to PDF made August 1, 1992, in the amount of $100,-000 is not avoidable. Judgment shall enter accordingly.

SO ORDERED.