F I L E D
United States Court of Appeals
Tenth Circuit

FEB 23 2000

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS
TENTH CIRCUIT**

THE HOME-STAKE OIL & GAS
COMPANY,

Plaintiff-Appellee,

and

HOME-STAKE ROYALTY,

Plaintiff,

v.

HOME-STAKE ACQUISITION
CORPORATION, a Delaware
corporation; ENVIROMINT
HOLDINGS, INC., a Florida
corporation, fka Tri Texas Inc.;
INTERNATIONAL INSURANCE
INDUSTRIES, INC., a Delaware
corporation; CHARLES S.
CHRISTOPHER; MICHAEL J.
EDISON, an individual sometimes dba
International Insurance Industries,
Inc.; AGO COMPANY, a Texas
corporation; AGR CORPORATION, a
Texas corporation,

Defendants,

v.

M. TOM CHRISTOPHER,

Third-Party-Respondent-
Appellant.

No. 99-5005
(D.C. No. 93-CV-303-H)
(N.D. Okla.)

**ORDER AND JUDGMENT** [*]

---

Before **EBEL, McWILLIAMS,** and **BRISCOE** , Circuit Judges.

---

Tom Christopher (Tom) [1] appeals the district court's ruling that he had no interest in 440 shares of Home-Stake Royalty Corporation stock and the court's order striking his claim for ownership of that stock. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and reverse and remand for further proceedings.

## I.

This case requires a determination of whether Tom presented evidence that he had an enforceable interest in 440 shares of Home-Stake Royalty stock. Tri Texas, Inc. acquired the 440 shares of stock in June 1991. In August 1991, Tom loaned $77,500 to Larry Jasper, who was a consultant to Tri Texas. Jasper signed the note for the $77,500 loan at the request of Charles Christopher (Charles), who signed a personal guaranty for the note. At various times relevant to the creation and extension of the loan, Charles was chairman of the board, chief

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1] We refer to the Christophers (Tom and Charles) by their first names to avoid potential confusion to the reader.

executive officer, and the controlling shareholder of Tri Texas. On September 6, 1991, Jasper signed a renewal note which extended the payment due date of the original note. On that same day, Charles sent Tom the stock certificate for Tri Texas' 440 shares of Home-Stake Royalty stock, along with a stock power assignment. The stock power assignment was signed by "Charles S. Christopher, Chairman of the Board," and it stated that Tri Texas transferred 440 shares of Home-Stake Royalty stock to Tom. Aplt. App. II at 188. A letter prepared on Charles' personal letterhead, addressed to Tom and signed by Charles individually, accompanied the stock certificate and assignment. The letter stated the stock was "being delivered . . . to collateralize your original loan . . . and renewal note . . . between yourself and Larry T. Jasper." Id. at 185. When Jasper did not pay the loan monies owed, Tom notified Charles he was keeping the stock.

In August 1993, Home-Stake Oil & Gas Company and Home-Stake Royalty filed a complaint in federal court against Charles, Tri Texas, and others for actions taken during proxy solicitations. Tom was not a party to the action. Home-Stake contended it had a lien against the 440 shares of stock owned by Tri Texas. In April 1996, the district court entered a default judgment against Tri Texas for $1,555,527.34 in actual damages and $3,146,618.68 in punitive damages, and a judgment against defendants jointly and severally for $17,782 in

actual damages.  The district court dismissed the claims against Charles.

Home-Stake Oil & Gas and Home-Stake Royalty merged on December 31, 1997, and Home-Stake Oil & Gas (hereinafter Home-Stake) is the surviving entity.  In February 1998, Home-Stake filed a motion for an order in aid of execution of its judgment against Tri Texas.  Home-Stake filed a motion requesting turnover of the 440 shares of stock owned by Tri Texas, but now held by Tom.  After Tom asserted ownership of the stock, the district court allowed him to become a party for purposes of the motion.  In April 1998, the district court ruled Tri Texas was the rightful owner of the stock and issued a writ of execution to seize and sell the 440 shares of stock.  Tom filed a motion for new trial.  In November 1998, the court denied the motion for new trial, found false statements had been made in support of Tom's claim to the Home-Stake stock, and sanctioned Tom by striking his claim.

II.

We are reviewing the district court's order on Home-Stake's motion for an order in aid of execution.  The district court considered affidavits and depositions to determine that Tom failed to show he had an enforceable interest in the Home-Stake Royalty stock.  We will not set aside findings of fact unless they are clearly erroneous, Fed. R. Civ. P. 52(a), but we consider questions of law de novo. Dang v. UNUM Life Ins. Co. , 175 F.3d 1186, 1189 (10th Cir. 1999).  This action

4

was brought in diversity and is controlled by Oklahoma law. We conclude that the district court erroneously applied the law in finding that Tom did not present sufficient evidence to show he had an interest in the Home-Stake stock. We remand the case for an evidentiary hearing on the issue of which party is entitled to the Home-Stake stock.

*Tom's interest in the 440 shares of Home-Stake Royalty stock*

The parties and the district court framed the issue as whether Tom had an enforceable security interest in the Home-Stake Royalty stock, focusing on whether Tri Texas gave value. However, the first step in determining whether Tom had an enforceable security interest in the stock involves an analysis of whether Tri Texas was a guarantor. "A guaranty is a promise to answer for the debt, default or miscarriage of another person." Okla. Stat. Ann. tit. 15, § 321 (West 1993). Initially, Charles promised to answer personally for the debt of Jasper. Charles signed a document entitled "Guaranty" at the time Jasper executed the original note, guaranteeing payment to Tom if Jasper failed to pay the note. After that note became due, Tri Texas guaranteed payment of the renewal note. In the September 6, 1991, letter, Charles stated that "[i]f the above referenced note is in default at any time for any reason, you are hereby authorized to liquidate the securities after giving me three (3) business days notice and

5

opportunity to purchase the securities for the balance of the note plus any interest and penalties due." Aplt. App. II at 185. Although this letter was signed by Charles without mention of Tri Texas, the letter referenced the stock power assignment, which was signed by Charles as chairman of the board of Tri Texas. When these documents are read together, the record supports the conclusion that Charles was acting in his official capacity with Tri Texas. Although Home-Stake alleges Charles' actions were fraudulent, there is no evidence in the record to support that allegation. Further, any claim for such fraud would lie with Tri Texas against Charles.

There was evidence of an enforceable guaranty agreement between Tom and Tri Texas for the payment of Jasper's debt. Generally, "a guaranty must be in writing, and signed by the guarantor; but the writing need not express a consideration." Okla. Stat. Ann. tit. 15, § 324 (West 1993). The guaranty from Tri Texas was in writing. Tom also accepted the guaranty and agreed to an extension of the debt from Jasper, making further consideration unnecessary. Okla. Stat. Ann. tit. 15, § 323 (West 1993). It was unnecessary for Jasper, the debtor, to be a party to the guaranty agreement or for Tri Texas to be a party to the principal obligation. Riverside Nat. Bank v. Manolakis, 613 P.2d 438, 441 (Okla. 1980). "The obligation of a guaranty is contractual, and the inquiry must, in each case, focus on the precise terms of the guarantor's undertaking the

6

dimension or breadth of the promise." Id. There was also some evidence that Tri Texas undertook performance of Jasper's obligation if Jasper did not pay the note when due.

The issue then becomes whether there was evidence that Tom had an enforceable security interest in the stock. The only formal requirements for an enforceable security interest are: "(a) a writing; (b) the debtor's signature; and (c) a description of the collateral or kinds of collateral." First Nat. Bank & Trust Co. v. McKown, 867 P.2d 1342, 1346 (Okla. Ct. App. 1993) (citing Okla. Stat. Ann. tit. 12A, § 9-203, cmt.1 (West 1963)).

The record contains evidence of an enforceable security agreement between Tom and Tri Texas. First, an enforceable security interest requires a writing. "While there are no magic words which create a security interest there must be language in the instrument which 'leads to the logical conclusion that it was the intention of the parties that a security interest be created.'" Mitchell v. Shepherd Mall State Bank, 458 F.2d 700, 703 (10th Cir. 1972) (quotation omitted). The September 6, 1991, letter, when read with the referenced stock power assignment, shows Tri Texas' intent to create a security interest in the stock for Tom. The next requirement for an enforceable security agreement is that the debtor sign the writing. See Okla. Stat. Ann. tit. 12A, § 9-105(1)(d) (West Supp. 2000) (defining debtor to include "the person who owes payment or other performance

7

of the obligation secured"). In the context of the guaranty agreement, Tri Texas was the debtor. Charles signed the stock power assignment in his capacity as chairman of the board of Tri Texas. He personally signed an accompanying letter which referenced the assignment and authorized liquidation of the stock in the event of a default. Finally, a security agreement must contain a description of the collateral. The letter from Charles contained a sufficient description of the 440 shares of Home-Stake Royalty stock offered as security. The record shows there was an enforceable security agreement between Tom and Tri Texas.

A security interest must attach to the collateral before it will be enforceable. A security interest is "an interest in personal property or fixtures which secures payment or performance of an obligation." Okla. Stat. Ann. tit. 12A, § 1-201(37)(a) (West Supp. 2000). There are three requirements for a security interest to attach to collateral: (1) "the collateral is in the possession of the secured party pursuant to agreement, the collateral is investment property and the secured party has control pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral"; (2) "value has been given"; and (3) "the debtor has rights in the collateral." Okla. Stat. Ann., tit 12A, § 9-203 (West Supp. 2000). The collateral in this case was the 440 shares of Home-Stake Royalty stock.

The record contains evidence that Tom had a security interest that attached

8

to the stock. Tom showed the existence of the first requirement for attachment by his physical possession of the stock certificate pursuant to the agreement with Tri Texas. Charles also had signed a writing containing a description of the collateral, which would likewise satisfy the first element. Next, value must have been given. "The provision requiring as a precondition to the attachment of a security interest the giving of value is intended to insure that the debtor who gives the security interest has received some consideration in return for the substantial rights transferred to the secured party." Morton Booth Co. v. Tiara Furniture, Inc., 564 P.2d 210, 214 (Okla. 1977). "[A] person gives 'value' for rights if he acquires them: . . . (d) generally, in return for any consideration sufficient to support a simple contract." Okla. Stat. Ann. tit. 12A, § 1-201(44) (West Supp. 2000); see Okla. Stat. Ann. tit. 12A, § 9-105(4) (West Supp. 2000) (stating that Article 1 definitions are applicable throughout Article 9). The record indicates that Tri Texas gave Tom a security interest in the stock in return for his extension of the due date of the note to Jasper. By extending Jasper's loan due date, Tom gave something of value to Tri Texas. See In re Reliable Mfg. Corp., 703 F.2d 996, 1000 (7th Cir. 1983) (stating that a "security interest given in consideration for the obligation of a third party clearly effectuates the purpose of [9-203(1)] and fulfills the requirements of the U.C.C. It is enough . . . that there be detriment to the secured party even if there is no benefit to the

9

owner of the assets subject to the security interest.").

Finally, the debtor must have rights in the collateral before a security agreement will attach to that collateral. There is no dispute that Tri Texas owned the Home-Stake Royalty stock. Because Charles acted on behalf of Tri Texas in offering the stock to Tom as security, the debtor was Tri Texas, which had rights in the collateral. There is evidence in the record to support a finding that the security agreement attached to the 440 shares of Home-Stake Royalty stock. After careful review of the record developed by the parties thus far, we conclude that the district court erred in finding that Home-Stake was entitled to the 440 shares of Home-Stake stock.

We note that although Tom may have an interest in the Home-Stake Royalty stock, he would only be entitled to such amount as is necessary to meet Jasper's obligation. "The obligation of a guarantor must be neither larger in amount, nor in other respects more burdensome than that of the principal; and if, in its terms, it exceeds it, it is reducible in proportion to the principal obligation." Okla. Stat. Ann. tit. 15, § 334 (West. Supp. 2000). To the extent the Home-Stake Royalty stock is worth more than the obligation owed by Jasper, any excess value would be returned to Tri Texas.

10

*Order striking Tom's claim to the Home-Stake Royalty stock*

The district court found that the statements Tom made in support of his motion for new trial were "markedly different" from his previous representations of fact and struck Tom's claim. Aplt. App. III at 441. The district court has the authority to strike claims under Federal Rules of Civil Procedure 11 and 12(f), as well as a general inherent power to sanction. We review the district court's sanctions for abuse of discretion. Jones v. Thompson, 996 F.2d 261, 264 (10th Cir. 1993).

It is not clear under what authority the district court acted in striking Tom's claim. The district court's order stated:

> Based upon a careful review of the evidence submitted by [Tom] in this case, including but not limited to [Tom's] papers filed in this matter on March 4, 1998 (Docket #147) and March 27, 1998 (Docket #152), the representations of [Tom's] counsel at the hearing on April 22, 1998, and [Tom's] report concerning the deposition of Mr. Jasper (Docket #165), attached to which is a transcript of Mr. Jasper's deposition, the Court finds that the statements asserted in support of [Tom's] supplemental motion are markedly different from previous representations of fact by [Tom] and his counsel. Clearly, the sworn testimony of Mr. Jasper and the previous representations of fact in this record cannot both be true. The Court is not required to determine which statement of facts is true and which is false. It is sufficient that the Court finds false statements have been made in support of [Tom's] claim in this action. Pursuant to this finding, the Court hereby strikes [Tom's] claim.

Aplt. App. III at 440-41.

The district court abused its discretion if it acted under Rule 11(c). That

provision requires notice and a reasonable opportunity to respond before the court may impose sanctions. Fed. R. Civ. P. 11(c). There is no indication in the record that the court provided Tom with notice and an opportunity to respond before striking his claim. The court also abused its discretion if it acted under Rule 12(f), which allows the court to act on its own initiative to strike any redundant, immaterial, impertinent, or scandalous matter from a pleading. Rule 12(f) does not apply in this case.

The district court has an inherent power to "'levy sanctions in response to abusive litigation practices.'" Jones, 996 F.2d at 264 (quoting Roadway Express, Inc. v. Piper, 447 U.S. 752, 765 (1980)). The district court's order is devoid of any explanation of the statements it found to be false. After reviewing the documents and transcripts to which the district court referred in its order, we are unable to find any material inconsistencies or materially false statements. The record before us does not support the imposition of such a drastic sanction and we find the district court abused its discretion in striking Tom's claim.

III.

The decision of the district court awarding the 440 shares of Home-Stake Royalty stock to Home-Stake is REVERSED. The district court's order striking Tom's claim is REVERSED. This case is REMANDED for an evidentiary

hearing to determine which party is entitled to the Home-Stake stock.

Entered for the Court

Mary Beck Briscoe
Circuit Judge